The STATE of Missouri, Respondent,

v.

Carl G. DAVISON, Appellant.

No. 54832.

Supreme Court of Missouri,
Division No. 2.

July 13, 1970.

Motion for Rehearing or to Transfer to Court
En Banc Denied Sept. 14, 1970.

John C. Danforth, Atty. Gen., Jefferson City, Warren K. Morgens, Asst. Atty. Gen., St. Louis, for respondent.

Richard D. Shewmaker, Thompson, Walther & Shewmaker, St. Louis, for appellant, Anthony M. Gioia, St. Louis, of counsel.

STOCKARD, Commissioner.

Defendant was charged with robbery of Robert E. Partain with a deadly and dangerous weapon, a knife. The jury found him guilty and the court, under the Second Offender Act, sentenced him to imprisonment for a term of fifteen years.

There is no challenge to the sufficiency of the evidence, and we need make only a brief summary of the facts as a jury reasonably could find them from the evidence. On August 23, 1968, after attending a night baseball game in St. Louis, Robert E. Partain and two companions drove west on Washington Avenue, and when in the 4400 block several colored persons stepped in front of their automobile and flagged them down. David Skiles, one of Partain's companions, got out of the automobile and defendant got in, and by use of a knife forced Partain to give him his wallet from which defendant took $61. At that time two policemen arrived and defendant was arrested. Defendant elected to testify. His version of what occurred was, in substance, that Partain and his companions were in the area looking for prostitutes, and that he had gotten in the automobile to talk to them when the police arrived, and Partain then accused him of robbery. He also admitted three previous convictions for burglary.

The first point on this appeal is that prejudicial error resulted from "the repeated references in the prosecution's argument to defendant's individual character and experience with the criminal law." Defend-

ant refers in the argument portion of his brief to two statements of the State's attorney, taken out of context, as follows:

" * * * it boils down whom you believe, the officer and the three boys or a man convicted three times of burglary and knows so much about the law that he tells the officers, 'Until you tell me I am under arrest, you can't put those handcuffs on me. I know my rights.' "

* * * * * *

"So this man knows something about criminal law as is obvious from that statement. That is what you have here. He had plenty of time to make that story up."

We first note that there is no assignment in the motion for new trial pertaining to this contention. In addition, at the time the statement first quoted above was made, the only objection was, "I object to this. * * * Your Honor, this man has a right to remain silent." There was no objection made to the second statement. However, in any event, the statements do not constitute improper comments on defendant's character. Instead, they are comments on the evidence and on defendant's credibility. We find nothing prejudicial to defendant.

Defendant next asserts error "because of the repeated references in the prosecutor's argument to the defendant having failed to tell his story to the police the night he was arrested."

After testifying that Partain and his two companions were looking for prostitutes, and that while he was talking to them the police officers came up and Partain accused him of robbery, defendant was asked on cross-examination whether he related this version as to what occurred to the police officers when he was taken to the station. His answer was that he tried to but was not permitted to do so. Without objection the following then occurred:

"Q. As a matter of fact, you exercised your constitutional rights and didn't

make a statement at all; isn't that correct?

A. They took me out.

Q. They did ask you and you declined to say?

A. They didn't ask me. When I tried to tell them, they didn't give me a chance to say anything after they had the statement of these men [Partain and his companions], and locked me up and told me I could remain silent."

In addition to the above, after defendant had testified that the police officer refused to permit him to tell his version of what occurred, he was asked if, and if so when, he was advised of his right to remain silent. He answered without objection that it was after he had been asked to sign a statement, and "I said no. * * * I said I wouldn't sign any statement."

In argument to the jury the State's attorney commented that the police officer had testified that he saw the money in defendant's hand when he arrived at the scene, and he commented further that "Then he [defendant] testified that he attempts to tell them down at the station his version. Rubbish! This is the first time we heard it yesterday in court." The objection was, "That isn't in evidence," and "he is emphasizing again the fact he [defendant] made no statement." Later the State's attorney again commented on defendant's testimony that he had tried to tell the police his version of what occurred, and he stated that the defendant does not have to "tip off" what he is going to say at trial, and when the State learns of defendant's version for the first time in court, the State has no opportunity to investigate it. The objection was that this placed "undue emphasis" on defendant's failure to make a statement. Defendant sets out in his brief two other statements made in argument to which no objection was made, and a third statement to which the objection was, "I think this is improper argument." We shall not set them out because our ruling would apply to these three statements even if an adequate objection had been made.

It is the general rule that an accused is not required to make any statement to the police following his arrest and the State is not entitled to refer to his failure or refusal to do so. State v. Doepke, Mo., 361 S.W.2d 689, 693. However, when a defendant testifies in his own behalf he is liable to cross-examination, contradiction and impeachment the same as any other witness. State v. Beishir, Mo., 332 S.W.2d 898; § 546.260 RSMo 1959, V.A.M.S. In this case the defendant personally testified, without objection, that he "tried" to tell his story to the police officers after he was taken to the police station but was denied the opportunity to do so, and he also testified that he refused to and did not sign a statement. Therefore, it was the defendant who presented the issue as to whether he failed to tell his story when arrested. The State's attorney was entitled to cross-examine defendant concerning that testimony, and also to comment on it in argument, and in doing so it was proper to comment on whether defendant's credibility warranted a belief of his testimony. We find no prejudicial error under the circumstances of this case.

In defendant's remaining point he asserts that § 546.180 RSMo 1959, V.A.M.S., is unconstitutional "because it sets up a system which puts a defendant's right to the non-discriminatory selection of a jury entirely at the mercy of the State, acting through its prosecutor, and which tends to and repeatedly will result * * * in the exclusion of Negroes from juries because of their race."

By reason of § 546.180, and the fact that defendant was charged with an offense punishable by death, a panel of 47 qualified jurors was selected. That panel was composed of 17 colored persons and 30 persons not of the colored race. The assistant circuit attorney exercised the peremptory challenges of the State by striking from

the panel 15 colored persons. Defendant exercised his peremptory challenges by striking from the panel 19 white persons and one colored person. The trial was held with a jury composed of 11 white persons and one colored person.

Defendant recognizes that in Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, after a detailed statement of the history, nature and purpose of peremptory challenges, and after a comment on the reasons for the exercise of peremptory challenges, the court said:

"With these considerations in mind, we cannot hold that the striking [by peremptory challenge] of Negroes in a particular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto*, would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

"In the light of the purpose of the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution required an examination of the prosecutor's reasons for the exercise of his challenges in any given case."

Defendant argues, however, that his challenge is not that the prosecutor's reasons for his peremptory challenges should be subject to scrutiny, but that § 546.180 is unconstitutional "because it sets up a system which tends to * * * [and] re-peatedly will result in the exclusion of Negroes from juries merely because of race. * * * The vice of the statute is that it gives the State too many peremptory challenges." It is contended that this point was not decided in Swain v. State of Alabama. We are of the opinion that it was.

In the Swain case it was held: "The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it." The court then pointed out that a "broader claim" was presented in the contention that "in criminal cases prosecutors have consistently and systematically exercised their strikes to prevent any and all Negroes on petit jury venires from serving on the petit jury itself," and that this "systematic practice" is invidious discrimination "for which the peremptory system is insufficient justification." This "broader claim" was directed to the validity of the system of peremptory challenges under consideration in that case which permitted the prosecutor to remove Negroes qualified for jury service from the petit jury. It was then stated that when there is proof that "the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance." It was then held that "the record * * * [was] not sufficient to demonstrate that the rule [had] been violated by the peremptory system" as it had been administered.

In this case defendant relies primarily on the fact that § 546.180 authorizes the State 15 peremptory challenges from a panel of 47 qualified jurors, and he contends that with this number of challenges the "system * * * carries constant opportunity for and [is an] open invitation to abuse by allowing too many challenges." We note that by the system under consideration in the Swain case the State was authorized to strike one-third of the number over twelve of the members of a qualified panel consisting of "about 75" persons.

The result of the holding in Swain v. State of Alabama was to approve the system provided for in that case, even though it authorized the State to strike approximately 28% of the qualified members of the panel. It was held that an accused could complain only if there was proof that in "case after case" the circumstances related in the Swain case resulted in actual discrimination. Defendant makes no attempt to demonstrate that the system of peremptory challenges provided for by § 546.180 does not meet the approved standard, nor does he attempt to demonstrate, in the manner mentioned in that case, that the administration of the system has resulted in an unconstitutional discrimination.

We consider that Swain v. State of Alabama rules the contention made in this case concerning the contended unconstitutionality of § 546.180, and there is no occasion to discuss the numerous other cases cited and referred to in defendant's brief.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.