**STATE of Missouri, Respondent,**

v.

**Solomon COLLOR, Appellant.**

**No. 57657.**

Supreme Court of Missouri,
Division No. 2.

Dec. 10, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Mary E. Fiser, Asst. Public Defender, Clayton, for appellant.

MORGAN, Judge.

Defendant was tried as a second offender for the crime of robbery in the first degree by means of a dangerous and deadly weapon. After the jury returned a verdict of guilty, the court assessed punishment at confinement for twenty-five years. §§ 560.120, 560.135 and 556.280, RSMo 1969, V.A.M.S. Defendant appealed prior to January 1, 1972.

On January 16, 1970, an individual entered the Tri-City Grocers in St. Louis County at approximately 8:30 p. m., pointed a gun at the cashier, and told her to give him all the money. She gave him between two and three hundred dollars, and he ran out the door. On the parking lot, he ran by a policeman and they exchanged shots. A red and white automobile crossed the lot and picked up the robber. Later, two other officers chased the automobile which was traveling at a high speed with the lights out. When the red and white automobile hit a lamp post, the driver jumped out and ran. The officers, then joined by an off-duty security guard, caught the driver. He had a .38 caliber revolver, loaded except for one spent cartridge, and he was bleeding about the face. Some currency was "strewn about" the area. The individual arrested was wearing a dark coat and a hat was found in the car. He was taken to the hospital for medical treatment.

At trial the officer who had exchanged shots with the robber positively identified defendant as the offender. He testified that there was "no question at all" in his mind. Other witnesses, some of whom were customers, said that they could not identify defendant; and one, who testified for defendant, said that defendant was not the man he saw running across the parking lot after he heard the shots. There was agreement that the robber was wearing a dark coat and a hat; and, that the projec-

tile fired at the officer, which lodged in a tire of an automobile on the parking lot, was recovered and by ballistic tests shown to have been fired from the weapon defendant had on his person when arrested.

Under point one, defendant complains of the trial court's failure to give a cautionary instruction on eyewitness identification. Reliance is placed on a Pennsylvania case, Commonwealth v. Kloiber, 378 Pa. 412, 106 A.2d 820 (1954), which held that where the identification is not positive, the court "should warn the jury that the testimony as to identity must be received with caution." It is suggested that the cumulative effect of others failing to identify defendant was such as to make that of the officer less positive. The weakness of this argument is pointed up by the following statement taken from the same case, l. c. 826, to-wit: " . . . [A] positive, unqualified identification of defendant by one witness is sufficient for conviction even though half a dozen witnesses testify to an alibi." Nevertheless, this court has considered the same question several times. Representative cases are: State v. Smith, 358 Mo. 1, 212 S.W.2d 787, 788–789 (1948); State v. Abbott, 265 S.W.2d 316, 319–320 (Mo.1954); State v. Bibbs, 461 S.W.2d 755, 760 (Mo.1970), and, State v. Taylor, 472 S.W.2d 395, 401–402 (Mo.1971). In the latter case, after reviewing some thirty cases from other states and nine federal cases, cited by defendant, this court reaffirmed the rule, l. c. 402, that the " . . . giving of such a cautionary instruction was purely discretionary . . . " We do not find an abuse of such discretion in this case. Furthermore, the instruction suggested would have been one collateral in nature, and, if thought proper, should have been requested by defendant. State v. Hester, 331 S.W.2d 535, 537 (Mo.1960); State v. Lafferty, 416 S.W.2d 157, 162 (Mo.1967); Mo.Dig., Criminal Law, ☞768(1).

Under point two, defendant contends the trial court committed "plain er-

ror" in failing to instruct the jury on circumstantial evidence. The point is without merit. A ". . . circumstantial evidence instruction is required only if all the evidence is circumstantial." State v. Elam, 485 S.W.2d 100, 102 (Mo.1972). See also State v. Selman, 433 S.W.2d 572, 576 (Mo.1968), and State v. Lewis, 482 S.W.2d 432, 435 (Mo.1972). Defendant relies on State v. Stewart, 329 Mo. 265, 44 S.W.2d 100 (1931), wherein it was held that a circumstantial evidence instruction should have been given; however, the case is distinguishable as the court there found all of the evidence to be circumstantial. The same is not true in the instant case. In passing, we point out that the new proposed pattern criminal instruction reference circumstantial evidence, No. 3.42, provides in Notes on Use that: "This instruction may be given if there is some direct evidence of guilt; though it need not be given at all unless the evidence is wholly circumstantial." Thus, the latest review of this Missouri rule has evidenced no desire on the part of the courts to alter it.

Under point three, defendant asserts that the prosecuting attorney failed to disclose evidence favorable to defendant. In connection with the Motion For New Trial, a hearing was had on this issue. The prosecutor did not recall whether or not such matters had been discussed with defense counsel, but the state's file did reflect that the red and white automobile was owned by a Mrs. Gomillia and that her husband, Robert, had been picked up as a suspect when found walking some blocks from where defendant was arrested. The record does not reveal whether or not defendant was aware of such facts.

■ We, again, recognize that Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) maintains the proposition that the suppression of evidence by a prosecutor which is favorable to an accused violates due process where the evidence is material either to guilt or to punishment irrespective of good faith or bad faith of the prosecutor. "Missouri does not have a rule that the State is obligated in a criminal cause to call as a witness every person who knows anything about the charge against defendant. State v. Eaton, Mo., 302 S.W.2d 866[8]. Our rule is subject to the qualification that the State may not suppress evidence vital to the defense or convey incorrect or misleading information to a defendant." State v. Napolis, 436 S.W.2d 645, 649[7–8] (Mo.1969). Reference the qualification just noted, the court in Spica v. State, 457 S.W.2d 683 (Mo. 1970), said, l. c. 686: "In State v. Thompson, Mo.Sup., 396 S.W.2d 697, 700, this Court, in 1965, recognized that 'the suppression of (or failure to disclose) evidence in the possession or control of the prosecution which is favorable to defendant and which might be persuasive to a jury, constitutes such a fundamental unfairness as to invalidate a conviction because violative of due process.' See also Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217; Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; and Giles v. Maryland, 386 U.S. 66, 87 S. Ct. 793, 17 L.Ed.2d 737." Related cases include: State v. Yates, 442 S.W.2d 21 (Mo.1969); State v. Swiggart, 458 S.W.2d 251 (Mo.1970); State v. Cannon, 465 S. W.2d 584 (Mo. banc 1971); State v. Morris, 480 S.W.2d 825 (Mo. banc 1972), and, State v. Scott, 491 S.W.2d 514 (Mo. banc 1973).

■ We consider the question, while assuming defendant was not advised of either fact noted, i. e., Mrs. Gomillia owned the automobile and her husband was arrested as a suspect somewhere in the general area. If we ignore the conflicting testimony as to the identity of the robber by those in the shopping center, a question which has now been resolved by the jury, there is no doubt but that defendant was driving the automobile when it crashed. Not only was he caught running from the wrecked automobile, but he suffered such injuries as to cause hospitalization for a week. He either knew who owned the

 

automobile and had permission to use it, or he had stolen it. It is inconceivable that development of the latter possibility would have aided defendant's cause before a jury. As to the arresting of another suspect, we agree with defendant's statement that " . . . it strongly suggests the activity of two people in connection with this crime." However, such would not have been material to defendant's individual guilt or punishment; but, at most, it would have indicated that he possibly did have an accomplice—a fact, which if true, defendant had to have known. The point is without merit.

 Lastly, defendant submits that the trial court erred in denying his challenge to the array of the petit jury. The attack was premised on the assertion that the state had used its peremptory challenges to exclude those persons of defendant's race.

The identical question was fully considered by this court in State v. Davison, 457 S.W.2d 674 (Mo.1970), in light of Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1964), and there ruled against defendant's contention. Similar results were reached in State v. Huddleston, 462 S.W.2d 691 (Mo.1971) and State v. Carter, 478 S.W.2d 358 (Mo.1972). Defendant concedes as much, but suggests reconsideration of the question in view of the recent case of Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). The latter case did not involve an alleged unconstitutional misuse of peremptory challenges, but was a broadside attack on the manner of selecting persons that served on both the grand jury and petit jury reference that defendant's case. For instance, the court said, 1. c. 495, 92 S.Ct. 1. c. 2165: "Moreover, in this case the principles governing the two claims are identical. First, it appears that the same selection process was used for both the grand jury and the petit jury. Consequently, the question whether jurors were in fact excluded on the basis of race will be answered the same way for both tribunals." Allowing of per-

emptory challenges, as the last step in the selection of a petit jury, has long been accepted as a fair and logical method of eliminating persons suspected of having some latent bias or prejudice that could not be reached through a challenge for cause. The defendant, as well as the state, participates in this refinement process. If either is motivated by bigotry or racism, it is to be abhored; however, absent a constitutional prohibition against the procedure, or the advancement of a fairer method of accomplishing the same objective, the practice of allowing peremptory challenges should not be abolished. The point is ruled against defendant.

Finding no reversible error, the judgment is affirmed.

All the Judges concur.