**STATE of Missouri, Plaintiff-Respondent,**

v.

**Clarence Horatio DINKINS, Defendant-Appellant.**

No. 34618.

Missouri Court of Appeals,
St. Louis District,
Division 1.

March 5, 1974.

Motion for Rehearing or Transfer to Court
En Banc or Transfer to Supreme
Court Denied April 8, 1974.

**2**

Brent J. Williams, Howard Schainker, Asst. Public Defenders, Clayton, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Gene McNary, Pros. Atty., Thomas E. Dittmeier, Asst. Pros. Atty., St. Louis, for plaintiff-respondent.

DOWD, Chief Judge.

The defendant, Clarence Horatio Dinkins, was charged by information with attempted robbery first degree by means of a dangerous and deadly weapon and one prior conviction for stealing. The jury found him guilty and he was sentenced by the court to fifteen (15) years imprisonment. Defendant appeals.

Defendant raises four points on this appeal. He contends that the court erred in overruling his motion challenging the array of the petit jury; in giving Instruction 1; in admitting into evidence State's Exhibits 8A and 9A and the testimony of Dr. Lucido; and, in overruling defendant's motion for judgment of acquittal in that the State failed to prove a concurrence of the essential elements of the crime. It appears that defendant's last point challenges the sufficiency of the evidence. We will deal with these points in inverse order.

A jury could reasonably find that on May 25, 1971 Mr. Morris Heisler heard a strong knock on the front door of his home in St. Louis County. He opened the door and saw two black males standing at his door talking with one another. One of the men produced a pistol and said, "This is a holdup." Thinking that the man was joking, Mr. Heisler pushed at his hand and the man began firing. Mr. Heisler hid behind the door until the shooting stopped at which time he found the defendant lying wounded across the threshold of the open door. Mr. Heisler noticed a sawed-off, 12-gauge shotgun protruding from the defendant's coat. He removed the shotgun and placed it in his house. Mr. Heisler then realized he had been wounded. He was taken to the hospital and was subsequently operated on by Dr. Lucido. The defendant was also taken to the hospital

**3**

with a gunshot wound of the head which required extensive surgery. At the hospital, six .22 caliber live shells were found in defendant's pants pockets.

Mr. Heisler testified that the defendant was not the man who said, "This is a hold-up." He also testified that the first time he remembered seeing the defendant was when he was lying across the threshold. The defendant did not testify.

The testimony of Dr. Lucido to which the defendant is objecting on this appeal was as follows (questioning by Mr. Dittmeier, the prosecutor):

"Q. And during the course of that operation, did you have occasion to remove a 22 slug from him [from Mr. Heisler]?

"A. Yes, I removed the slug, 22 slug. (Whereupon, State's Exhibits No. 9 and 9-A were marked.

"Q. Doctor, I am going to show you what has been marked as State's Exhibit No. 9, which is the vial there; could you identify that for the Court?

"A. Yes. This is the slug. May I . .

"Q. Well, first of all, I am talking about the vial.

    *   *   *   *   *   *

"Q. So the bullet that you removed from Mr. Heisler you put into that vial, is that right? A. Yes, sir.

"Q. Now, would you open that vial up and take out the contents? And would you tell the Court what the contents are?

"A. The content is a 22 bullet.

MR. WILLIAMS: If I may object at this time, your Honor. I don't think there has been a qualification as to the type of caliber. I know the doctor is an extremely well qualified physician, but I am questioning whether . .

THE COURT: All right. Perhaps you had better lay a qualification for the identity of the caliber.

"Q. (By Mr. Dittmeier) Doctor, have you removed bullets before? A. Oh, yes.

"Q. And are you familiar with weapons and hand guns?

"A. Well, I am not an expert. I know what one looks like and I know what happens to bullets. I have some idea of sizes. But I marked this one with X's on both ends. There's no doubt about it. There are the X's. (Indicating).

MR. WILLIAMS: I don't doubt it's the same bullet, Doctor. I am just questioning whether or not it's the same caliber. You were testifying as to the caliber.

THE WITNESS: Well, that's what I said it was. I said it was .22.

"Q. (By Mr. Dittmeier) Is that what you put in the report?

"A. That's what's in all the reports. That's right. I have a receipt for it from the office, right here. I signed for it.

MR. DITTMEIER: At this time, Your Honor, I would like to offer State's Exhibit No. 9 and State's Exhibit 9-A into evidence.

THE COURT: Be received."

Dr. Viloria of St. Louis County Hospital was called to testify by the defendant. He had operated on the defendant. In response to the questioning of defense counsel, Dr. Viloria testified that his hobby was pistols and guns and that he was sure that the bullet removed from Mr. Heisler, State's Exhibit 9-A, was a small caliber bullet. He further stated he was not sure if it was a .25 or .22 caliber.

It is obvious that there was sufficient evidence from which a jury could find the defendant guilty of attempted robbery.

"[A]n attempt is an intent to do a particular criminal thing, with an act towards it falling short of the thing intended. * * * The defendant must have taken steps going beyond mere preparation, by doing something bringing him nearer the crime he intends to commit. * * * The act need not, however, be the ultimate step toward, or the last proximate, or the last possible, act to the consummation of the crime attempted to be perpetrated. * * *" State v. Thomas, 438 S.W.2d 441, 446 (Mo.1969).

In determining the sufficiency of the evidence to support a conviction, the evidence must be viewed in the light most favorable to the State, accepting all substantial evidence and all legitimate inferences fairly deducible therefrom which tend to support the verdict, and rejecting contrary and contradictory evidence. State v. Petrechko, 486 S.W.2d 217, 218 (Mo. 1972). There was sufficient evidence from which a jury could find that the defendant armed with a 12-gauge shotgun and carrying ammunition for a .22 caliber weapon, was at Mr. Heisler's door with the intent to rob Mr. Heisler, and but for the shooting, would have accomplished that very act. A finding that defendant is guilty of attempted robbery is completely warranted from the evidence presented to the jury and we hold against defendant on his challenge of the sufficiency of the evidence.

Defendant next asserts that it was error to admit into evidence State's Exhibits 8A (the six .22 caliber live shells) and 9A (the bullet removed from Mr. Heisler) and the testimony of Dr. Lucido set out above. Defendant contends that the doctor's testimony as to the bullet being .22 caliber and the ammunition which the defendant carried permitted the jury to draw the inference that the defendant was connected with the man who shot Mr. Heisler, and he asserts that the evidence was too equivocal to be the basis of such an inference. There are serious doubts whether

any question of the admissibility of this evidence has been preserved for our review. It is clear from that portion of Dr. Lucido's testimony set out above that the caliber of the bullet was mentioned twice prior to the time of the defense's objection and was before the jury at that time. Defendant did not renew his objection when the State offered Exhibit 9A into evidence. And while the defendant objected to the seizure of the pants as being unlawful, he made no objection during the questioning of the police officer who identified Exhibit 8A that this evidence was too equivocal or should not be admitted and made no objection to its admission into evidence. Nevertheless, we will discuss defendant's contention giving him the benefit of the doubt as to preserving this contention.

In upholding the testimony of a coroner, the Supreme Court held that persons having experience with gunshot wounds may testify with respect to their observation of the wound and give their opinion that it was made by a particular caliber bullet. State v. Truster, 334 S.W.2d 104, 109 (Mo.1960). While the testimony in this case is somewhat different (i. e., Dr. Lucido testified that the bullet was .22 caliber where in *Truster* the coroner testified that the wound was made by a .22 caliber bullet), this difference is inconsequential in that a jury could draw the same inferences from either and could properly weigh either based on the witness' qualifications. In addition, the testimony of Dr. Viloria that the bullet was either .25 or .22 caliber was elicited by defendant and would permit the same inference to be drawn by the jury as did Dr. Lucido's testimony.

For these reasons we hold that the trial court did not err in admitting Exhibits 8A and 9A and the testimony of Dr. Lucido.

Instruction 1 provides:

"INSTRUCTION NO. 1

The Court instructs the jury that if you find and believe from the evidence in this case beyond a reasonable doubt and

in the light of these instructions of the Court that in the County of St. Louis, and State of Missouri on the 25th day of March, 1971, the defendant, Clarence Horatio Dinkins, either alone or together with another, did wilfully, unlawfully and feloniously, by means of a certain dangerous and deadly weapon, a twelve gauge shotgun, as mentioned in the evidence, then and there feloniously and by force and violence to the person of one Morris Heisler, attempt to rob, steal, take and carry away the money and personal property, if you so find, from the person of, in the presence of, and against the will of the said Morris Heisler, if you so find, with the felonious intent then and there to steal the said money and personal property, if you so find, then you will find the defendant guilty of Attempted Robbery in the First Degree by Means of a Dangerous and Deadly Weapon. Unless you so find the facts to be as aforesaid, you will acquit the defendant.

" 'Feloniously,' as that term is used in these instructions, means wickedly and against the admonition of the law, that is unlawfully."

The defendant contends that this instruction is broader than the charge; that it failed to include defendant's theory of the case that he was not present until after the attempted robbery was committed; and there was no evidence to support the submission of attempted robbery by means of a 12-gauge shotgun. The assertion of variance with the information is based on the fact that the information charges the defendant as a principal whereas Instruction 1 includes the phrase "either alone or together with another." It is well established that an accessory may be charged as a principal in an information. State v. May, 500 S.W.2d 744, 746 (Mo.App.1973). Defendant also challenges that there was no evidence of his acting alone making it error to include the aforementioned phrase in the instruction. The giving of a similar instruction has been upheld in response to the assertion that there was no evidence of the defendant acting alone because the defendant could have been found guilty in either event as hypothesized. State v. Eckenfels, 316 S.W.2d 532, 535 (Mo.1958).

Next, there was no evidence before the jury to support the defendant's theory that he was elsewhere when the attempted robbery occurred. Defendant relies on the proposition that an instruction which fails to plainly and fairly hypothesize a defense is erroneous where there is evidence to support this defense. State v. Drane, 416 S.W.2d 105, 107 (Mo.1967). The cases upon which he relies, however, involve evidence presented by the defense. There is no such evidence here. Moreover, the instruction requires the jury to find intent and presence in order to convict and this properly submitted defendant's theory that he was not present until after the attempted robbery. State v. Pruett, 425 S.W.2d 116, 118 (Mo.1968).

■■ Finally, defendant contends that there is no support for an instruction on attempted robbery by means of a 12-gauge shotgun since there was no evidence that defendant attempted to use that weapon or indicated an intention to use it. It is, however, a legitimate inference deducible from the evidence that defendant had the shotgun with the intention of using it to rob Mr. Heisler. The fact that the attempt never progressed to the point of necessitating the use of the shotgun by the defendant does not negate the inference. We hold that Instruction 1 was proper.

■ Lastly, defendant asserts that the court erred in overruling his motion challenging the petit jury array. More specifically, defendant states that the State peremptorily struck the only black member of the jury panel and that this was part of the systematic exclusion of Blacks by the

St. Louis County's Prosecuting Attorney's Office. In support of this point and defendant's motion for a new trial, the defendant adopted testimony adduced in the trial court in State v. Collor, 502 S.W.2d 258 (Mo.1973). The *Collor* case had been tried in St. Louis County Circuit Court and the appeal in *Collor* was pending at the time defendant's motion for a new trial was argued. The Supreme Court in *Collor* ruled on this precise question based on the same testimony and held at page 261:

"Lastly, [the] defendant submits that the trial court erred in denying his challenge to the array of the petit jury. The attack was premised on the assertion that the state had used its peremptory challenges to exclude those persons of defendant's race.

\* \* \* \* \* \*

" \* \* \* Allowing of peremptory challenges, as the last step in the selection of a petit jury, has long been accepted as a fair and logical method of eliminating persons suspected of having some latent bias or prejudice that could not be reached through a challenge for cause. The defendant, as well as the state, participates in this refinement process. If either is motivated by bigotry or racism, it is to be abhored; however, absent a constitutional prohibition against the procedure, or the advancement of a fairer method of accomplishing the same objective, the practice of allowing peremptory challenges should not be abolished. The point is ruled against defendant."

With such a timely pronouncement on the identical issue by the Supreme Court, we hold against the defendant on this point.

Judgment affirmed.

SIMEONE and WEIER, JJ., concur.