**STATE of Missouri, Respondent,**

v.

**Adrian P. WILLIAMS, Appellant.**

**No. KCD 27979.**

Missouri Court of Appeals, Kansas City District.

March 1, 1976.

Motion for Rehearing and/or Transfer Denied March 29, 1976.

Thomas Larson, Public Defender, Douglas N. Merritt, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Nanette K. Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

The indictment charged defendant with first degree murder, but the jury found him guilty of only manslaughter and fixed his punishment at 10 years imprisonment. Defendant appeals on the following sole ground:

"The court erred in refusing defendant's request that the jury be stricken and a new jury be drawn from a different venire because of total exclusion of black

people by use of preemptory [sic] strikes by the prosecutor."

The facts bearing upon this issue are that the venire of 34 persons contained six blacks. The prosecution used six of its ten peremptory challenges to strike all of those veniremen, thus obtaining an all white petit jury for the trial.

Immediately after the jury was empaneled but before being sworn, defense counsel objected to the manner of the jury selection as follows:

"MR. MERRITT: Although there are still veniremen in the room, it obviously can be seen from the bench, and I would make objection to the systematic exclusion of blacks *from this jury*. There were six black people, all of whom were struck by the State. There were four females, two of whom are black, three of whom were struck by the State. I believe that this is a systematic and invidious discrimination against my client who is black. I object to the jury and ask the Court to set it aside and call a new venire.

"MR. ELY: If it please the Court, we chose the jury on the basis of our subjective opinion as to the qualifications by the questions and by the forms provided by the Court.

"THE COURT: The request to discharge the jury and the jury panel is denied. Your objection is noted." (emphasis added).

In defendant's motion for new trial, his counsel repeated the objection as follows:

"1. The Court overruled Defendant's objection to the systematic and total exclusion of black veniremen *from the jury*. Objection was made while the venire was in the courtroom for easy identification by the court. There were eight black persons on the venire of 42 total. One black man and one white man were excused for cause by the Court. One black man was included among those in excess of the 34 required leaving then six black persons and 38 others. In the preemptory [sic] strikes the State struck all six of the black veniremen. The Defendant was black. The Defendant believes that

*such exclusion* is a denial of due process of Constitutional magnitude and results in invidious discrimination of his cause." (emphasis added).

It is to be noted that all objection made by defendant in the trial court related to the exclusion of black persons from this particular jury in this particular case. The Point Relied Upon in this court is no broader. Indeed, the narrow scope of defendant's objection, limited to what happened in this single case, is emphasized by the nature of his argument in this court and summarized in his brief as follows: "By use of well founded mathematical formulae concerning the probability and permutations of random occurrences which are more fully explained in the addendum attached hereto, it can readily be seen that the challenges of all six of the black people from the venire could only occur in a random choice situation one time in 6,500. Or stating it another way it can be said that only in one case out of 6,500 cases would all six of the black people have been stricken on a purely mathematical random selection basis. The fact that such was the case strongly suggests that the common factor of race was instrumental in causing their removal from the petit jury."

■ Defendant's objection in the trial court and his Point and argument in this court completely fail to state a ground for demanding the striking of the jury chosen and the drawing of a new jury. It is now well settled that the State may exclude all blacks from the petit jury in any one given case by the use of its peremptory challenges. Further, the United States Supreme Court has held that this is permissible although done intentionally and expressly because of race. This was strongly stated by that Court in the leading case *Swain v. Alabama*, 380 U.S. 202, l. c. 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965), as follows:

"It [the peremptory challenge] is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of

people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. . . . Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried."

■ The discrimination becomes unconstitutionally objectionable only if it is proved that the prosecutor in a given county has practiced that same kind of exclusion systematically in all cases. This distinction found enunciation in *Swain v. Alabama, supra,* in the following much quoted language:

"We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance. Cf. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220. In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purpose of the peremptory challenge are being perverted."

The rule so formulated in *Swain* was acknowledged and adopted by the Missouri Supreme Court in *State v. Davison,* 457 S.W.2d 674 (Mo.1970) and has been followed by the Missouri courts consistently ever

since: *State v. Bradford,* 462 S.W.2d 664 (Mo.1971); *State v. Huddleston,* 462 S.W.2d 691 (Mo.1971); *State v. Smith,* 465 S.W.2d 482 (Mo.1971); *Clark v. State,* 465 S.W.2d 557 (Mo.1971); *State v. Brookins,* 468 S.W.2d 42 (Mo.1971); *Brown v. State,* 470 S.W.2d 543 (Mo.1971); *State v. Carter,* 478 S.W.2d 358 (Mo.1972); *State v. Johnson,* 499 S.W.2d 371 (Mo.1973); *State v. Collor,* 502 S.W.2d 258 (Mo.1973); *State v. Baker,* 524 S.W.2d 122 (Mo. banc 1975); *State v. Kelly,* 506 S.W.2d 61 (Mo.App.1974); *State v. Dinkins,* 508 S.W.2d 1 (Mo.App.1974); *State v. Langston,* 515 S.W.2d 852 (Mo.App.1974); *State v. Booker,* 517 S.W.2d 937 (Mo.App. 1974); *State v. Brown,* 527 S.W.2d 15 (Mo. App.1975); *State v. Davis,* 529 S.W.2d 10 (Mo.App.1975); *Edwards v. State,* Mo.App., 535 S.W.2d 124.

■ Defendant has made no claim by objection in the trial court or by his Point on appeal in this court that the prosecutor in Jackson County has discriminated by use of peremptory challenges to remove all Negroes from petit juries "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be . . . ." Absent such allegation, defendant has wholly failed to bring himself within the line of cases cited above. Moreover, he made no request for a hearing and he made no effort whatsoever to show a systematic pattern of exclusion in *all* cases as required by the uniform decisions on this subject.

The closest that defendant has come to tackling the basic problem of showing such a systematic pattern of exclusion is his request in the course of his brief that this court take judicial notice of the multitude of cases which has been brought to the attention of the Missouri appellate courts on this point. While defendant has not undertaken the task of collecting these cases, our own independent research discloses that there have been 18 cases in which Missouri appellate decisions have passed upon this point, those cases having been cited above in this opinion. Of those, only five were appeals from convictions in Jackson County. Five cases constitutes only a tiny percentage of all the criminal cases

which have been tried in Jackson County since *Swain*. That statistic falls far short of the proof necessary to show the prohibited systematic pattern of discrimination. Indeed it constitutes a much lower caliber of proof than that which was held insufficient in *State v. Booker*, supra, *State v. Dinkins*, supra, and State v. Davis, supra.

Defendant cites and attempts to rely on cases dealing with school desegregation and the exclusion of black physicians from the use of hospitals. Those decisions deal with altogether different problems and have no bearing here.

Affirmed.

All concur.