**STATE of Missouri, Plaintiff-Respondent,**

v.

**Vincent WANDIX, Defendant-Appellant.**

**No. 43486.**

Missouri Court of Appeals, Eastern District, Division Three.

Sept. 15, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 16, 1981.

**112**

C. Clifford Schwartz, Jr., Shaw, Howlett & Schwartz, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George R. Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

REINHARD, Judge.

Defendant was convicted of the sale of a controlled substance, heroin, in violation of § 195.020 RSMo. 1969. The sale took place on July 23, 1975 at defendant's residence in St. Louis County.

Defendant was tried and convicted, but won a reversal of his conviction in the Supreme Court of Missouri, *State v. Wandix*, 590 S.W.2d 82 (Mo.banc 1979) *cert. denied*, 445 U.S. 972, 100 S.Ct. 1665, 64 L.Ed.2d 248 (1980). This appeal is from his conviction upon retrial. The facts on which he was convicted on retrial are essentially the same as set out in the former opinion.

Defendant first contends that the trial court erred in overruling his motion for a continuance based on the publication of two newspaper articles concerning the trial. The first of these appeared in the *St. Louis Post Dispatch* on June 25, 1980, setting forth in brief fashion the facts of defendant's prior conviction and that he was being retried. The second article was published in the *St. Louis Globe Democrat* on June 26, 1980. It reported that defendant's brother was arrested in the hallway outside of the courtroom in which the case was being tried after allegedly using obscenities and accusing three prosecution witnesses of lying. The article went on to relate the fact of defendant's prior conviction.

Counsel for defendant moved for a continuance and the motion was overruled. Defendant now contends that in overruling the motion the trial court failed to take the "strong measures" required by the U. S. Supreme Court in *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Defendant's reliance on *Sheppard* invites a look at the facts of that case:

Sheppard stood indicted for the murder of his wife; the State was demanding the death penalty. For months the virulent publicity about Sheppard and the murder had made the case notorious. Charges and countercharges were aired in the

news media besides those for which Sheppard was called to trial. In addition, only three months before trial, Sheppard was examined for more than five hours without counsel during a three-day inquest which ended in a public brawl. The inquest was televised live from a high school gymnasium seating hundreds of people. . . .

(B)edlam reigned at the courthouse during the trial and newsmen took over practically the entire courtroom, hounding most of the participants in the trial, especially Sheppard. At a temporary table within a few feet of the jury box and counsel table sat some 20 reporters staring at Sheppard and taking notes. The erection of a press table for reporters inside the bar is unprecedented. . . . Having assigned almost all of the available seats in the courtroom to the news media the judge lost his ability to supervise that environment. The movement of the reporters in and out of the courtroom caused frequent confusion and disruption of the trial. . . .

There can be no question about the nature of the publicity which surrounded Sheppard's trial. . . . "Murder and mystery, society, sex and suspense were combined in this case in such a manner as to intrigue and captivate the public fancy to a degree perhaps unparalleled in recent annals. Throughout the preindictment investigation, the subsequent legal skirmishes and the nine-week trial, circulation-conscious editors catered to the insatiable interest of the American public in the bizarre."

*Id.* at 354–56, 86 S.Ct. at 1517–18. The trial judge in *Sheppard* refused defense counsel's request that the jurors be asked whether they had read certain prejudicial accounts. *Id.* at 357, 86 S.Ct. at 1519.

The trial court has wide discretion over the granting of a continuance because of publicity. *State v. Owens*, 537 S.W.2d 209 (Mo.App.1976). The trial court in this case followed, as nearly as possible, the procedure recommended in *State v. Spica*, 389 S.W.2d 35, 41 (Mo.1965) and quoted in *Owens*: "In the vast majority of such cases

. . . the proper procedure is not to postpone the trial, but to proceed to trial and to determine on the voir dire of the panel and the individual talesmen whether a fair and impartial jury can be selected."

■ Although the panel was already selected, the trial court asked the jurors whether any of them had read the articles or whether anyone had spoken to them about the articles. The response was in the negative. At each recess and adjournment the jury was given the general admonition, contained in MAI–CR 1.08, against discussing the trial or reading about it. We feel the measures taken were strong enough to guard against any possible influence or prejudice. We find no abuse of discretion in the refusal to grant a continuance.

■ Defendant's second point complains of the "systematic exclusion" of blacks from the jury by the prosecuting attorney of St. Louis County. Defendant offers no evidence of any kind of a pattern of exclusion and hence does not bring himself within the line of cases prohibiting the same. *See State v. Williams*, 535 S.W.2d 128 (Mo. App.1976). The peremptory striking of all black veniremen is not grounds for reversal without such a pattern of systematic exclusion. *Id.*

Defendant's third point concerns certain photographs depicting the house in which the sale took place. The prosecution offered the photographs into evidence and counsel for defendant objected on the ground that the prosecution had not complied with Rules 25.03 and 25.08 pertaining to defendant's request for discovery.

■ Initially we note that the defendant has failed to include his request for discovery in the record. It is an appellant's duty to see that a complete record is filed, otherwise there is nothing to review. *State v. McClain*, 602 S.W.2d 458 (Mo.App.1980). Nevertheless, in light of an apparent admission by the state that a request had been made, we have considered this point.

■ Rule 25.03 provides for disclosure upon request and under Rule 25.08 the duty

to disclose is a continuing one. The prosecution contended that the reason the photos had not been shown to the defense was that they were taken the night before trial and not delivered to the prosecution until the morning of trial. Common courtesy would have required some mention of these circumstances prior to the attempt to have the exhibits admitted. We are not asked to judge the prosecution however, but rather, we must decide whether the court abused its discretion in failing to impose sanctions requested by the defense. *State v. Davis*, 556 S.W.2d 45, 47–48 (Mo.banc 1977); *State v. Sykes*, 559 S.W.2d 643, 646 (Mo.App. 1977). The sanctions requested were to either grant a continuance or exclude the exhibits. Here we find no abuse of discretion. The photographs were not probative of any element of the offense and the defense was armed with its own photographs of the same scene.

Judgment affirmed.

CRIST, P. J., and SNYDER, J., concur.