**STATE of Missouri, Respondent,**

**v.**

**Ronald BRITT, Appellant.**

**No. 57705.**

Supreme Court of Missouri,
Division No. 1.

Nov. 12, 1973.

Rehearing Denied Jan. 14, 1974.

HOLMAN, Judge.

Defendant was charged with the offense of robbery in the first degree. See §§ 560.120 and 560.135.[1] The trial resulted in a verdict of guilty and the jury fixed defendant's punishment at imprisonment for a term of eight years. Defendant has duly appealed.

Sandra Sondag testified that on October 10, 1970, she was employed as a desk clerk at the Downtowner Motor Inn in St. Louis and was working the shift from 3 until 11 p. m.; that shortly before 11 o'clock, in accordance with established custom, she checked the cash drawer and removed the money which exceeded $300, and placed it in the safe; that as she prepared to place the cash drawer containing $300 back in the cash register, two young men suddenly came behind the counter and while one held a knife the other grabbed the drawer and they rapidly went around the desk and out the side door of the lobby; that she got a close look at the face of the man who took the cash drawer and later identified him as the defendant; that she immediately called to the bellman, who pursued the robbers, and that she then called the police. This witness further testified that on that night there was a fraternity party in progress in a room on the mezzanine at which 50 or more people were attending, most of them black; that when the bellman pursued the robbers there was a group of about ten people in the lobby, in front of the door, and he had trouble getting through the crowd; that the $300 in the cash drawer consisted of currency, the largest denomination being $20, some change, and quite a few coins in wrappers; that the wrapper admitted in evidence, which was found in the car in which defendant was arrested, was similar to one of the wrappers in the cash drawer; that when the police arrived she described the two men as being colored, about 20 years old, and wearing dark clothing; that one was a little taller and more "heavy set"

———◆———

John C. Danforth, Atty. Gen., Neil Mac-Farlane, Asst. Atty. Gen., Jefferson City, for respondent.

Tom P. Mendelson, St. Louis, for appellant.

1. Statutory references are to RSMo 1969, V.A.M.S.

than the other; that about 4:30 a. m. on the next day, at the request of the police, she went to police headquarters where she viewed a lineup of four or five people and in which she identified defendant. She stated that all of the men in the lineup were black and were reasonably close in height and weight, and that one was considerably older than the others; that there "is absolutely no doubt at all" that defendant was the person who picked up the cash drawer in the robbery.

The bellman, James Coleman, testified that on the evening in question he had difficulty in keeping cars from stopping and parking in the driveway; that there was a gray Buick with its front end "bashed in," containing six or seven people, which kept driving up and stopping in the driveway; that on three occasions he had had to direct them to move out of the driveway; that when he saw the holdup in progress he pursued the two men who went through the north door; that although he was delayed a little by men blocking the doorway, he saw the two men get into the Buick previously described; that about two or three hours later the police took him to the police station where he saw defendant and a number of others sitting in a room; that he had previously told the police he could identify the two men involved; that he recognized defendant at the police station as being the man who had taken the cash drawer. This witness identified the defendant in court as being one of the robbers, stating there was no doubt in his mind that he was the one.

Patrolman Jerry Mitchell testified that he responded to the call from the motel and received a report from Sandra concerning the theft and a description of the robbers; that he also interviewed Coleman and obtained a description of the Buick car in which the robbers had escaped; that he broadcast this information over police radio and about 1:30 a. m., responded to a call for assistance by another officer who had located the car at 10th and Carr Streets; that he went to that location and participated in the arrest of the persons in the car, including defendant.

James Mosley, another patrolman, testified that while patrolling an area near 10th and Carr, he observed a Buick of the description he had previously obtained; that he stopped the car and arrested the subjects, who were six males and one female, including defendant; that a green dime coin wrapper was found in the center of the front seat of the car; that after the arrest the occupants of the car were searched and defendant was found to have something over $50 in his possession; that the amount of money possessed by all of the car occupants totaled $301.29; that the currency consisted of twenties, tens, fives, and ones.

Patrick Casey, police sergeant, testified that he participated in the arrest of the defendant and later was present at the lineup; that he was in the room at the time Sandra viewed the lineup and identified defendant as the person who took the cash drawer; that he was also present at the time Mr. Coleman separately viewed the same lineup and made the same identification.

Defendant testified that he attended the dance at the Downtowner on the occasion in question and was with Keith Cain (the person identified as the other participant in the robbery); that they went to the Downtowner in the Buick described in evidence with a number of other persons; that he had nothing to do with the robbery and was standing near the door when the bellman was chasing the robbers and, in so doing, burned his coat; that he later protested to the bellman and sought damages because of the burned coat; that he later left the motel and walked to 20th and Franklin, where he happened to meet the other parties in the Buick, left with them, and was later arrested. Defendant also presented as witnesses two friends who testified that they were in the motel lobby and verified the fact that defendant was near the door when the bellman was pursuing the robbers.

During the cross-examination of Sandra Sondag defendant's attorney sought to show that he "attempted to talk with her, just to get her account of what happened, and that she refused to discuss the thing." His theory was that such was proper "to show a possible bias of this witness." Upon the State's objection the court ruled, "sustained as not the proper method to accomplish what you state." Defendant here contends that the court's ruling constituted reversible error.

Defendant's contention presents as interesting question which apparently has not been settled in this state. Defendant's main reliance is upon State v. Solven, 371 S.W.2d 328 (Mo.1963), but we think that case is clearly distinguishable. There the defendant's attorney contacted a State's witness who refused to talk with him until she telephoned the circuit attorney and complied with the circuit attorney's directions that she not talk with the attorney. The trial court sustained an objection to an offer to show those facts. In ruling that such was reversible error we strongly relied on the fact that she followed the direction of the circuit attorney in refusing to discuss the case. There are, however, two Alabama cases cited in *Solven* which tend to support defendant's position . The case of State v. Cropper, 327 Mo. 193, 36 S.W.2d 923 (1931), would appear to support the court's ruling. Therein it is stated that "[p]roof that Shipley's wife [widow of the murdered man], Edgar Herd, and Edward Herd had been cautioned not to talk to the defendant's counsel in the absence of counsel for the state would have been immaterial, and was properly excluded on the state's general objection thereto. While these witnesses were under no legal obligation to talk to the defendant's counsel, they were free to do so at any time, regardless of the suggestions or directions of the counsel for the state." However, we note that in *Cropper,* it does not clearly appear that defendant's counsel actually sought to interview these witnesses. Defendant's cited case of Phillips v. East St. Louis & S. Ry. Co., 226 S.W. 863

(Mo.1920), is not applicable because there the ruling related to a showing that the witness refused to answer questions upon the taking of a deposition.

We recognize that many people dislike being questioned by an attorney because of a suspicion that the purpose is to prepare to attack and perhaps belittle them in a public trial. It is elementary that a witness is not required to talk with an attorney, and we have the view that a refusal does not necessarily indicate ill will or bias against his client. We have, however, concluded that courts should permit a showing of such refusal for whatever it may be worth as an indication of bias against the attorney's client.

In the case at bar, however, we have concluded that the ruling did not constitute reversible error. It appears that Sandra cooperated with the police in reporting the facts and in viewing a lineup in order to identify defendant. Such was her duty as a citizen. As the prosecuting witness in the case she undoubtedly had an interest in desiring that the person she had identified as one of the robbers should be convicted. Any juror of average intelligence would know of her interest, and a showing that she refused to talk with defendant's attorney would not significantly add to that knowledge. As indicated, we rule that the error was not prejudicial.

Defendant's next point is that the lineup in which he was identified by the two witnesses was unnecessarily suggestive, was conducive to mistaken identification, and tainted the in-court identification. He says the failure of the court to sustain his motion to suppress that testimony violated his right to due process of law. We rule this contention against defendant. We have a photograph before us of the four lineup participants. They are all black and while one is older three of them appear to be about the same age and size. It is true that defendant was the only one who was wearing a hat and overcoat. In

our view, however, that was in his favor because all the testimony indicated that the robbers did not have on such clothing and hence it would have been more difficult to identify defendant under those circumstances. Moreover, upon request, he removed the hat and coat during the lineup proceedings.

There was also evidence that both witnesses had an excellent opportunity to observe the defendant at the time of the robbery. On this subject, Sandra testified as follows: "Q When he first touched you or shoved you, did you look at him? A Yes. Q Did you look at his face? A Yes, I did. Q Did you see his face? A Yes. Q Did you see a full front? A I saw very close, just as he was standing like this (indicating). * * * Q Is there any doubt in your mind that Ronald Britt picked that cash drawer up? A There is absolutely no doubt at all."

James Coleman testified that he saw defendant in the Buick several times before the robbery when he was directing the driver of the car not to park in the driveway; that he saw him again during the robbery and as he fled from the motel and re-entered the Buick; that when the police arrived he told them he could identify the robbers.

There was no evidence of any suggestive influence by the police at the time of the lineup. Also, the evidence clearly indicates that the identifications were based on the observation of the witness at the scene of the crime, i. e., an ample independent basis for the in-court identifications. We therefore, as indicated, rule that there was no basis shown for any taint of the in-court identifications and that defendant's due process rights were not violated. State v. Richardson, 495 S.W.2d 435 (Mo.1973); State v. Jackson, 477 S.W.2d 47 (Mo. 1972); State v. Everly, 430 S.W.2d 156 (Mo.1968).

■ Patrolman Mosley, over objection, was permitted to testify that when defendant and the other occupants of the Buick were arrested they had a total of $301.29 upon their persons. Defendant contends that this evidence was irrelevant and prejudicial. While this presents a rather close question, we have concluded that the evidence was admissible. There was evidence indicating that these people were together in the car prior to the robbery and that the two who actually committed the robbery made their escape in that car and were arrested therein two and one half hours later with the same group of people. Also, a coin wrapper of the type taken at the motel was found in the car. In view of the close time element, and the connection of the car and its occupants with the robbers, we do not think it was wholly irrelevant to show that the car occupants had in their possession a sum of money of approximately the amount taken in the robbery. State v. Hampton, 275 S.W.2d 356 [3] (Mo.1955). The case of State v. Ball, 339 S.W.2d 783 (Mo.1960), relied upon by defendant is so factually different that it has no application.

■ As heretofore indicated, defendant offered two witnesses who testified that he was in the motel lobby until after the robbers had fled. On cross-examination the circuit attorney brought out that they had not reported that fact to the police or circuit attorney. On redirect, defendant's attorney asked questions seeking an explanation as to why such a report had not been made. The court sustained objection to such questions and defendant here complains that such was error. We will not consider this contention because no offer of proof was made as to what the testimony would have been and hence the matter is not preserved for our review. Moore v. Parks, 458 S.W.2d 344 [6] (Mo.1970).

■ The defendant's next contention is that the court erred in giving Instruction No. 3. He objects to the following portion thereof:

"You are further instructed that you are the sole judges of the credibility of

the witnesses and of the weight to be given to their testimony. In determining such credibility and weight you may take into consideration the demeanor of the witness, his or her manner on the stand, his or her interest, if any, in the result of the trial, his or her relation to or feeling towards the defendant or any witness testifying before you in this case, the probability of [or] improbability of his or her statements, as well as all the facts and circumstances given in evidence."

Defendant says that the instruction was erroneous because it "might very well have been construed by the jury as a comment having particular application to and serving to discredit the testimony of appellant." This type of instruction has been given in most criminal cases tried in this state for many years, and has consistently been approved. Defendant says, however, that the instruction particularly discredits his testimony because all of the jurors knew he had a great interest in the case. Of course, jurors all know of a defendant's vital interest in a case without reference to any instruction. We cannot believe that a general credibility instruction of this nature could possibly have had any prejudicial effect upon defendant's case. We accordingly rule this point against defendant.

The remaining contentions of defendant relate to the refusal of the trial court to require that defendant have an opportunity to examine the police report and use it in the trial. The matter concerning production of police reports has been a troublesome problem for the courts of this state during recent years, as indicated by the following decisions: State v. Aubuchon, 381 S.W.2d 807 (Mo.1964), State v. Cannon, 465 S.W.2d 584 (Mo.1971), and State v. Morris, 480 S.W.2d 825 (Mo.1972). Fortunately, in this case, we are not required to be deeply concerned with the question from the standpoint of precedent because, on October 9, 1973, this court adopted rather extensive rules for discovery in criminal cases. When those rules are published and become effective, problems of the nature of those before us will not likely occur.

However, notwithstanding the above action, it is necessary to carefully examine the question here because this defendant is entitled to have had a fair trial and we must determine whether the action of the trial court constituted prejudicial error.

Defendant filed a motion to require production of the report in which he alleged that it was essential to his rights of due process, fair trial, and cross-examination to have the report produced. He also mentioned therein that witness Sandra Sondag had refused to discuss the case with his attorney. The motion was heard on the morning of the trial and the court ruled that it would hold the matter in abeyance until some of the evidence was heard.

Patrolman Mitchell testified on cross-examination that he had reviewed the police report in preparation for his testimony but that he did not have it with him. Defendant's attorney requested that he be furnished a copy of the report for his information and particularly in order to cross-examine the witness. The prosecutor offered to agree that the entire report be read to the jury but objected to it being used by the defense "out of context and piecemeal." The court sustained the objection, indicating that it was not a proper document for use in attempting to impeach the witness.

The matter next came up when Patrolman Mosley was on the stand. On cross-examination he stated that he had reviewed the report in order to refresh his recollection and that he had a copy in his pocket. Again the attorney requested that he be allowed to see the report in order to determine "whether his memory is accurately refreshed or not." At that point the court declared a recess and read the entire ten-page report and thereafter sustained the

objection of the circuit attorney. Defendant also sought production of the report at the time the motion for new trial was heard, but the request was denied.

In order to properly review this point we have requested and have received a copy of the police report. We have carefully studied the report and have compared it with the testimony of the witnesses. We have decided that we need not determine the technical question as to whether or not the court erred in failing to require that a copy of the report be shown to defendant's counsel. This for the reason that we have concluded that the report would not have been helpful to counsel in presenting his defense, and hence no prejudice resulted from his failure to obtain it.

The description in the report of one of the robbers was "Male, Negro, age 19–20, height 5′9″, black hair, brown eyes, medium build, dark complexion, and dark clothing." The other was described exactly the same except his height was given as 5′10″. These descriptions are not inconsistent with those given by Sandra in her testimony. The account of the occurrence given to the officers by Sandra and Coleman, as shown by the report, was in accord with their testimony at the trial. We also find nothing in the report relating to the arrest and identification of defendant that would have aided his attorney. Other items in the report would have been detrimental to defendant, such as, for example, that the car in which defendant was arrested was a stolen automobile.

As heretofore indicated, the trial court reviewed the report and obviously concluded that it would not have been useful to defendant's counsel and we agree with that conclusion. Since the defendant was not prejudiced by the rulings of the court, no basis for reversal in that respect is shown.

The judgment is affirmed.

All concur.