STATE of Missouri, Respondent,

v.

Kenneth E. GOFF, Appellant.

No. KCD 26751.

Missouri Court of Appeals,
Kansas City District.

Dec. 2, 1974.

Willard B. Bunch, Public Defender, Sixteenth Judicial Circuit, Dougler N. Merritt, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst., Atty. Gen., St. Louis, for respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

DIXON, Chief Judge.

Kenneth E. Goff was convicted by a jury of second degree burglary and stealing. The jury being unable to agree on a sentence, the court sentenced the defendant to two consecutive four-year terms. The defendant appeals, urging error in the trial court's overruling a motion to suppress identification testimony alleged to be suggestive by reason of the demonstration of photographs, error in overruling the judgment for acquittal because the evidence was insufficient, and error in the State's argument. We affirm.

On the afternoon of August 6, 1972, Marina Kauffman (age 15), was in her front yard across the street from the Reagon home. She saw the same 1961 or 1962 light blue Ford Galaxie drive slowly by her home five to six times. She took special note of the car because 1) it was traveling very slowly (less than five miles per hour), 2) it was old and noisy, and 3) one of her friends had a similar vehicle. The Ford's visibility and repetitive passage was enhanced by the very light traffic (fewer than twenty cars). on the street during the period. In addition to being loud and light blue, she described the old Ford as having: a great deal of rust on the front fender; a white license plate; and an "infant seat" in the back seat. The car had four occupants, a man and a woman in the front seat and two small children in the back seat. The younger of the children was sitting in the "infant seat." At trial, Miss Kauffman described the "male" who was driving as having brown or black hair and a beard. During several of the passes, Marina noted the man was wearing a small brown straw hat. When he was not wearing the hat, it was seen on the dashboard of the car.

That evening between 10:00 and 10:30, Miss Kauffman was standing in her driveway talking with some children when she saw a man she recognized as the driver of the car in John Reagon's yard directly across the street. He was not wearing the hat.

At about the same time, another of Reagon's neighbors, Michael Gerant, saw an unidentified individual running from the back of the victim's lot. Apparently he was carrying something. Gerant watched the person make at least three similar trips over "quite some time." On one of these trips, the man was carrying something that looked like a television set. Gerant then asked a third neighbor to call the police. While watching the person carrying "items" to the ditch, Gerant saw a light blue 1961 Ford four-door sedan park near the ditch. Two men then began to load items into the car. Mr. Gerant then drove his own car along the road past the parked Ford, proceeded to a store nearby, turned around and drove past the car again. As he drove by, he noticed that the license

plate had a Johnson County, Kansas, designation. He noted the full license number which he had a neighbor write down immediately and which the neighbor later gave the police. The Ford then drove away.

Within minutes, the police arrived. Their investigation, both at that time and after Mr. Reagon's return, revealed that: 1) Reagon's home had been burglarized; 2) someone had apparently left a small brown straw hat in the Reagon garage; 3) the license number given them by Gerant was that of a plate registered to the grandmother of defendant's wife; 4) the defendant and his wife were in possession of the car and license plate for a period of two weeks prior to the burglary; and 5) the defendant had purchased the car sometime near the night of the burglary. During the investigation, Miss Kauffman told the police that she could identify the man she saw driving the car and in Reagon's front yard. After telling them she could recognize the man, the police, over a period of several days, showed her small groups of photographs. On the third such showing, she examined two photographs. One was the photo of a man whom she identified as the driver of the car and the other was of a woman whom she recognized to be the adult passenger. During her testimony at the hearing on the motion to suppress, Marina indicated that the police officer displaying the pictures to her made no comment beyond asking if "these were the people I had seen."

 On the first ground urged, error in overruling the motion to suppress the witness Kauffman's identifying testimony, the parties are in agreement with respect to the applicable law. Defendant concedes that State v. Mentor, 433 S.W.2d 816 (Mo.1968) and State v. Parker, 458 S.W.2d 241 (Mo.1970) are the controlling authority in Missouri, citing Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247 (1968). The defendant points to language in that opinion relating to the dangers of misidentification through the use

of photographs. The holding of *Simmons,* following United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and the companion case, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), is that a determination of the tainting of a witness' testimony so that it must be excluded requires a consideration of all of the facts giving due regard to the totality of the surrounding circumstances. *Parker* identifies three factors for consideration in such a review: (1) the presence of an independent basis of identification; (2) a positive courtroom identification; and (3) the absence of any suggestive influence by others. The defendant argues only the issue of suggestion, pitching that argument on the alleged suggestibility of the teenage witness and the suggestive manner of photographic identification because only a single photograph was displayed at the time of the actual photographic identification of the defendant by the teenage witness. Some attempt is also made to argue that the teenage witness, Kauffman, did not have an independent basis of identification because she did not notice the license number of the vehicle and because, as defendant argues, the man she saw in the car had his head turned away from her.

 Dealing first with the issue of the independent basis for identification of the teenage witness, it seems apparent that her testimony, that she observed the individual she identified on five or six occasions during a six-hour period on a residential street with less than twenty cars passing during that period, constitutes an independent basis for identification. That there was reason for her to take note of the vehicle and its two occupants is manifest from the fact that the car was unusually loud in its operation and was driven at a very slow rate of speed. Piquing the teenager's curiosity with respect to the vehicle was the fact that it was a vehicle similar to one of her friends from which it could certainly be inferred that she would have looked at the vehicle for the purpose of as-

certaining the identity of the driver. There thus seems to be no basis for the attenuated argument of the defendant that the teenage witness had no independent basis for identification. No argument is made that the teenage witness did not make a positive and unequivocal courtroom identification in support of her testimony.

On the issue of the suggestibility of the witness and the suggestive nature of the photographic identification, certain facts are overlooked in the defendant's argument.

■ First, on the issue of the claimed suggestible nature of the witness, the record demonstrates that she had been shown several groups of photographs prior to the identification of the photograph of the defendant, and she had rejected those photographs as not being those of the driver of the car. This argues that the witness was not, in fact, suggestible, but was utilizing her independent basis for identification to select the photograph of the driver. The use of the single photograph, coupled with the photograph of the woman occupant of the car, likewise identified by the teenage witness, is certainly not the most appropriate way to solicit her photographic identification of the defendant. Nonetheless, even if the selection of these two photographs by the police tended to suggest the defendant's identity to the teenage witness, that suggestion was not buttressed by any comment from the officers of other improper activity, and viewed in the totality of the circumstances, does not so taint her in-court identification as to render it inadmissible under *Parker*. More than makeweight in this determination is the finding of the trial court who heard and observed the unequivocal testimony of the witness at the pre-trial hearing in which she testified to her description of the defendant to the police, her rejection of the initial photographs shown to her and her subsequent unequivocal identification of the defendant by the photograph eventually demonstrated to her.

Upon the second issue, the defendant's claim that the trial court erred in overruling a motion for judgment of acquittal because of insufficient evidence is again based upon a factual argument. As defendant sees the evidence, the only connection of the defendant to the crime was that the vehicle which was used in the burglary had a license number which was traced to a car owned and controlled by the defendant. He argues that defendant was charged and convicted of actual burglary which would include breaking and entering by the defendant and that he was not charged as acting in concert with another. Defendant concedes that a hat similar to the one seen by the witness Kauffman was found upon the hood of the car inside the garage, from which an inference might arise that the defendant was present in the garage, but claims that that is too attenuated to support the conviction. This limited view of the evidence argued by the defendant does not fairly represent the evidence favorable to the State and the favorable inferences therefrom. It ignores the testimony of the witness Kauffman which identified the slowly-driven car with the defendant occupying it cruising in the residential neighborhood and looking at the burglarized house on the afternoon of the burglary. It ignores the specific identification of the defendant by the witness Kauffman at 10:30 in the evening in the driveway of the Reagon house which was within a few minutes found to have been burglarized. At that time, the defendant was not wearing the hat which the witness Kauffman had earlier observed and which was subsequently identified by her at the trial and which other evidence showed was the hat found in the Reagon garage. Defendant's reliance on State v. Lee, 491 S.W.2d 317 (Mo. banc 1973), is misplaced, for there the sole connection of the defendant to the use of a stolen credit card was an automobile license number, shown to be the defendant's, written upon a charge slip. There were no independent circumstances to show the defendant's possession of the card. The State's case here

did not hinge solely upon the defendant's control of the vehicle unquestionably used in the burglary in this case, but from that circumstance and positive and direct evidence connecting the defendant with the scene of the crime in a time frame such that an inference of his participation plainly arises.

■ The defendant's attack upon the use of the hat as a circumstance indicating the defendant was at the scene of the crime rests upon the same argument made in connection with the motion to suppress. The defendant attempts to attack the independent basis for the witness Kauffman's identification of the hat. It seems clear from the record that she had ample and appropriate opportunity to be an objective observer, and her description of the hat and its subsequent identification in court lends credence to the State's hypothesis that the hat in the Reagon garage was a circumstance connecting the defendant with the crime charged. Bearing in mind the rule of State v. Boone, 490 S.W.2d 318 (Mo. App.1973), that we review the evidence and all reasonable inferences in the light most favorable to the State and all evidence and inference to the contrary being rejected upon a jury verdict, the defendant's contention that the evidence was insufficient to support the verdict must be rejected.

■ The third and final argument of the defendant in support of his claim of error is a claim that the prosecutor commented upon the defendant's failure to testify. The point in defendant's brief inexplicably contains in quotation marks a statement of that argument which is not supported by the record. That misleading statement in the point would be sufficient to reject the defendant's argument. Nonetheless, the argument of the prosecutor as contained in the record has been examined. It does not constitute a comment upon the failure of the defendant to testify. The trial court gave an instruction on circum-

stantial evidence, and, in arguing the theory of that instruction, the prosecutor closed with a comment that he did not hear any evidence creating a theory that was inconsistent or that was consistent with the defendant's innocence. Plainly, under Missouri law, the prosecutor is entitled to comment that there was no evidence of any kind contrary to the State's evidence. State v. Hutchinson, 458 S.W.2d 553, 555 (Mo. banc 1970). The trial court who heard the argument overruled the motion for mistrial and in doing so exercised his discretion in determining whether or not the argument was prejudicial, and this court will not interfere with the exercise of that discretion unless it is clear from the record that the trial court abused its discretion to the prejudice of the defendant. Hutchinson, supra, 1. c. 556. There being no error, the conviction is affirmed.

All concur.