**STATE of Missouri, Plaintiff-Respondent,**

v.

**Gregory DAVIS, Defendant-Appellant.**

**No. 35493.**

Missouri Court of Appeals,
St. Louis District,
Division Three.

Sept. 9, 1975.

Motion for Rehearing or Transfer
Denied Oct. 22, 1975.

Rau & Martin, James M. Martin, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Judge.

Defendant appeals from a jury verdict finding him guilty of robbery first degree by means of a dangerous and deadly weapon. On appeal the defendant raises four (4) principal contentions for our consideration: (1) That the trial court erred in refusing to suppress lineup and subsequent in-court identification said to be the product of impermissibly suggestive procedures; (2) That post-trial examination of the foreman of the jury revealed an improper consideration of the defendant's failure to testify in violation of the defendant's right against self-incrimination; (3) That the trial court erred in giving an instruction connecting reasonable doubt with substantial doubt thereby shifting the burden of proof to the defendant; and (4) That the defendant was entitled to a judgment of acquittal because he has demonstrated the use of peremptory challenges by the State for the systematic exclusion of blacks from jury service.

The defendant does not challenge the sufficiency of the evidence; therefore, we will simply summarily highlight the facts relevant to defendant's contentions.

On January 18, 1970, a Velvet Freeze store in St. Louis County was robbed. The two employees of the store, Davis and Ebert, viewed the robber at the time of the incident and Ms. Davis recognized the robber as a previous customer of the store. On the night of the robbery, Ms. Davis gave a fairly inexplicit description of the man to the police.

Approximately two years later, the defendant was arrested and placed in a lineup with two other men. It appears that there was some disparity in the heights of the participants and that one of the participants was a uniformed member of the police custodial staff. At the lineup, Ms. Davis identified defendant as the perpetrator of the robbery. At the trial one year later, the defendant was identified by both employees of the store. The defense attempted to impeach the identifying testimony of Ms. Davis by establishing that she could not clearly establish the duration of the robbery nor recall certain other facts. On cross-examination, Ebert admitted that he had discussed the matter of identification with Ms. Davis in the hall of the courthouse but insisted that his in-court identification of the defendant was based on observations on the night of the robbery.

At the conclusion of the trial, the judge gave one instruction connecting reasonable doubt with substantial doubt. The nature of the instruction is further explored subsequently.

Following the trial, the defendant entered a motion for judgment of acquittal charging use by St. Louis County prosecutors of peremptory challenges to systematically exclude blacks from jury service. The motion, buttressed by a statistical memorandum, was denied.

Following the proceedings, the defense attorney apparently spoke with the foreman of the jury who revealed some discussion in jury chambers regarding the failure of the defendant to take the stand. Over the objection of the State's attorney, the foreman of the jury was examined. Defendant's motion for a new trial on this point was overruled.

■ Defendant's general contention concerning the suppression of identification testimony is multi-pronged. The lineup identification is characterized as the product of suggestive procedures. The in-court identification of the defendant is challenged as equivocal and as derivative from the allegedly suggestive lineup. In assessing the general contention, we must keep in mind that what we are guarding against is the "substantial likelihood of irreparable misidentification," *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and that the admissibility of identification testimony is determined in light of the totality of the circumstances, *State v. Parker*, 458 S.W.2d 241, 243 (Mo.1970) and *State v. Cole*, 519 S.W.2d 370, 372 (Mo.App.1975). As an aid in the application of this totality of the circumstances approach, Missouri courts have suggested a three-part test requiring that:

" . . . consideration be given to (1) the presence of an independent basis of identification, (2) the absence of any suggestive influence by others, and (3) posi-

tive courtroom identification. . . . " (*State v. Parker*, 458 S.W.2d 241, 244)

This three-part test has been reaffirmed by subsequent Missouri courts, *State v. Boothe*, 485 S.W.2d 11, 13 (Mo.Banc 1972); *State v. Tidwell*, 500 S.W.2d 329, 331 (Mo.App.1973); *State v. Murphy*, 508 S.W.2d 269, 274 (Mo.App.1974) and *State v. Goff*, 516 S.W.2d 818 (Mo.App.1974). Several more specific considerations are encapsulized in the three-part test.

■ The first of these more specific considerations requires attention to the mechanics of the lineup. This examination fits most neatly under the second listed factor of the *Parker* test. In the present case there is no claim of police prompting witnesses or other police misconduct. The defendant isolates as suggestive factors a disparity in the height of the participants and the clothing of one of the participants. In evaluating this contention of the defendant, we must keep in mind that " . . . [p]ersons in a lineup cannot be identical, and to say that one was 'darker' or taller than another does not establish unfairness. . . . " *Gaitan v. State*, 464 S.W.2d 33, 35 (Mo.1971). Noticeable differences in the appearance and clothing of the participants in lineups have repeatedly been held not to necessitate a finding of suggestiveness, *State v. Britt*, 504 S.W.2d 38, 41 (Mo.1973); *State v. Lee*, 491 S.W.2d 317 (Mo.Banc 1973); *State v. Cole*, supra, at 373 and *State v. Tidwell*, supra, at 332. The suggestiveness of a lineup should be measured by a subjective test in terms of its effect on the identifying witness.

■ The importance of this observation is highlighted in the present case by recognition that the defendant has failed to suggest any prejudice resulting from the disparity in height. The identifying witness was only about 5′4″ tall and admitted during cross-examination by defense counsel that she was not a very good judge of height. To the witness, the participants in the lineup were "all tall men. All about the

same height." The disparity in heights can hardly be labelled as a prejudicially suggestive factor when it was not even noticed by the identifying witness. The different clothing of one of the participants in the lineup also does not seem to be a prejudicially suggestive factor. Defendant's complaint here is not that he appeared in the lineup in distinctive clothing as did the defendant in *State v. Everly*, 430 S.W.2d 156 (Mo.1968), but rather that another participant was a " . . . uniformed member of the police custodial staff. . . . " Upon viewing the photograph of the lineup, we fail to see anything distinctive about the clothing of this participant. He is pictured wearing blue jeans and a dark lightweight jacket without any visible insignia. Once again defendant has failed to demonstrate any plausible suggestive effect on the identifying witness. Our conclusion is that the lineup was not suggestive.

■■ Even if the lineup were suggestive, parts 1 and 3 of the *Parker* three-part test would indicate another approach under which identification testimony may be admissible. This alternative approach requires a judicial examination of the existence of an independent source for the identification, *State v. Payne*, 452 S.W.2d 805, 810 (Mo.1970). The presence of an independent source will serve to remove any taint that might result from a suggestive confrontation, *State v. Goshon*, 506 S.W.2d 99 (Mo.App.1974) and *State v. Davis*, 507 S.W.2d 32, 35 (Mo.App.1974). Isolation of an independent source requires consideration of numerous factors including:

" . . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." (*Neil v. Biggers*, supra 409 U.S. at p. 199, 93 S.Ct. at p. 382)

*Neil v. Biggers*, supra, dealt specifically with an independent source for a pre-trial identification but a similar analysis should be applicable to the assessment of an independent source for an in-court identification. Applying this test to the present case reveals an independent source. The witness viewed the defendant at close range for some minutes, *State v. Goshon*, supra. Ms. Davis recognized the defendant as a previous customer of the store, *State v. Johnson*, 457 S.W.2d 762 (Mo.1970). The description given to the police was not specific but also was not inaccurate. There was no showing of any hesitancy in the identification at the time of the lineup. The transcript of the trial reveals a similar certainty in the witness' in-court identification. The final listed factor, the length of time between the crime and the identification initially, appears significant in the present case. Two years passed between the crime and the lineup—three between the crime and the trial.

In the *Neil* case, a seven (7) month lapse of time was suggested as a "seriously negative factor in most cases." The lapse of time was, however, held not to be fatal to the identification because of the decisiveness of the other factors. A similar analysis negates any effect of the delay involved in the present case. The conclusion is that the trial court did not err in finding that the in-court identification of the defendant by the witness Ms. Davis had an independent source resting in the view of the defendant at the time of the crime. Ms. Davis so testified. Analysis of the in-court identification by the other witness, Mr. Ebert, reveals the same independent source for the identification. While Ebert admits that he discussed the identity of the defendant with Ms. Davis in the hall of the courthouse, Ebert's testimony is that he based his identification on seeing the defendant at the scene of the crime.

■ The only remaining consideration relates to the certainty of the in-court identification. Appellant suggests several circumstances questioning the identification

but all of these circumstances should go to the weight of the identification rather than the admissibility.

The trial judge, therefore, did not err in refusing to suppress the lineup and in-court identification.

An additional claim of the defendant is that the jury acted improperly in that it drew adverse inferences from the defendant's failure to testify thereby violating defendant's Fifth Amendment protection against self-incrimination. Defendant attempts to support this contention by reference to the transcript of the post-trial testimony of the jury foreman. The contention, however, is foreclosed by two considerations.

First, we note that the defendant's proof of such misconduct is far from overwhelming. The testimony of the foreman consists simply of his impressions of the thoughts of other unnamed members of the jury. The testimony of the foreman also reveals that, " . . . the statement was also made (that) this would in no way, shape or form have any bearing on the case being tried. . . . "

 Secondly, both the approach taken by the defendant and the result sought run counter to the long-recognized general rule in Missouri that a jury will not be heard to impeach its own verdict, *State v. McDaniel*, 392 S.W.2d 310, 318 (Mo.1965) (juror visited scene of crime during deliberations, contrary to court's instructions); *State v. Beal*, 474 S.W.2d 830, 833 (Mo.1971) (juror misconstrued meaning of an item of evidence) and *State v. Foster*, 490 S.W.2d 659, 661 (Mo.App.1973) (juror took notes in trial). The general rule makes inadmissible the testimony of jurors relating to allegations of misconduct. While the rule has been subjected to criticism as arbitrary in its limits, it has been recognized as a protection of the finality of verdicts.[1] Apparently Missouri courts have rejected the criticisms. The prohibition against the post-trial examination of jurors seems most reasonable where, as here, the attempt is to probe the decision making processes of the jury. A claim identical to that of the defendant in the present case, that the jury drew adverse inferences from the defendant's failure to testify, has been rejected as contrary to the general rule as long ago as *State v. McGinnis*, 320 Mo. 228, 7 S.W.2d 259 (1928).

 Another contention of defendant's is that the trial judge erred in submitting the case to the jury under an instruction connecting reasonable doubt with substantial doubt. First, we note that this contention of defendant's has not been properly preserved for review due to the failure of the defendant to set out the allegedly erroneous instruction in the argument portion of his brief as required by § 84.04(e), V.A.M.R. Similar inadequacies were pinpointed in *State v. Larkins*, 518 S.W.2d 131, 135 (Mo.App.1974) and *State v. Mesmer*, 501 S.W.2d 192, 197 (Mo.App.1973). Defendant here not only failed to set out the instruction but also misdirected the court's attention by reference in the brief to "Instruction No. 8" while Instruction No. 5 is the only instruction actually bearing on reasonable doubt.

Furthermore, even if the point had been preserved for review, we would reject it in the present case. The instruction objected to was as follows:

"The law presumes the defendant to be innocent and this presumption continues until it has been overcome by the evidence which proves the defendant's guilt beyond a reasonable doubt; and the burden of proving the defendant's guilt rests with the State.

"If, however, this presumption has been overcome by the evidence and the guilt of the defendant proved beyond a reasonable doubt, your duty is to convict.

"If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you should acquit; *but*

1. See McCormick, Evidence 2d Ed. 1972, p. 148.

*a doubt to authorize an acquittal on that ground out (sic) to be a substantial doubt touching the defendant's guilt, and not a mere possibility of the defendant's innocence.*"[2] (Emphasis added.)

As recognized by the defendant, this reasonable doubt instruction has been in use in Missouri for over a century, apparently originating in *State v. Nueslein*, 25 Mo. 111, 124 (1857). The instruction has withstood a multitude of attacks like the defendant claiming that it is confusing or shifts the burden of proof. A few recent examples of such judicial approval include *State v. Aikens*, 507 S.W.2d 386 (Mo.1974); *State v. Scott*, 491 S.W.2d 514 (Mo.Banc 1973); *State v. Taylor*, 506 S.W.2d 94 (Mo.App. 1974) and *State v. Brown*, 527 S.W.2d 15 (Mo.App.1975). While we are aware of the logical dilemma expressed so well by Judge Seiler in his concurring opinion in *State v. Davis*, 482 S.W.2d 486 (Mo.1972),[3] we must also recognize, as he did, that it seems improper to label the trial judge's use of such instruction as error where the instruction has been so long approved, *State v. Davis*, supra, at 489. We do not reject defendant's contention simply because of the instruction's continued acceptance but also because " . . . [w]e cannot say here as a matter of law that a jury of reasonably intelligent men and women were confused and misled by the instruction in returning their verdict against this defendant." *State v. Yarbrough*, 506 S.W.2d 90, 92 (Mo.App. 1974).

Defendant claims a denial of his Sixth Amendment right to an impartial jury of his peers by virtue of the St. Louis County prosecutor's office's use of peremptory challenges to exclude black jurors from the jury panel. Claims identical to that of the defendant's have been frequently litigated in Missouri courts and uniformly have been unsuccessful. Three distinguishable lines of analysis have been utilized to dispose of such contentions. All three might be said to derive from the landmark case on the subject of exclusion by peremptory challenges, *Swain v. State of Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Applying any of the three approaches to the present case yields the defendant's defeat.

The first line of analysis was demonstrated in *State v. Collor*, 502 S.W.2d 258, 261 (Mo.1973) where the court observed: " . . . Allowing of peremptory challenges, as the last step in the selection of a petit jury, has long been accepted as a fair and logical method of eliminating persons suspected of having some latent bias or prejudice that could not be reached through a challenge for cause. The defendant, as well as the state, participates in this refinement process. If either is motivated by bigotry or racism, it is to be abhored; however, *absent a constitutional prohibition against the procedure, or the advancement of a fairer method of accomplishing the same objective, the practice of allowing peremptory challenges should not be abolished.*" (Emphasis added.)

This analysis might best be labelled as pragmatic. It seems to admit the possibility of the discriminatory use of peremptory challenges but emphasizes the necessity of maintaining some system comparable to peremptory challenges. The *Collor* court might find some support for its approach in *Swain's* praise for the peremptory challenge system as a " . . . necessary part of trial by jury . . . " *Swain*, supra, 380 U.S. at 219, 85 S.Ct. at 835, which " . . .

2. This case was tried February 6, 1973; therefore, we note that the above instruction, pursuant to Supreme Court Rule 20, entitled "Instructions and Verdict Form in Felony Cases," adopted and effective January 1, 1974, MAI–CR, will no longer be given.

3. This concurring opinion was noted by the majority in *United States v. Atkins*, 487 F.2d 257, 260 (8th Cir. 1973). The *Atkins* court's disapproval of the reasonable doubt-substantial doubt formulation was dicta. Trial counsel had not objected to the instruction when given. The Court of Appeals held that giving the instruction in this situation did not equal plain error.

serves (a function) in a pluralistic society in connection with the institution of jury trial . . . ." *Swain*, supra, at p. 222, 85 S.Ct. at p. 837. The *Swain* court felt that the value of the peremptory challenge system was sufficient to justify the insulation of the system from examination in any individual case—see also *State v. Davison*, 457 S.W.2d 674, 677 (Mo.1970) and *State v. Huddleston*, 462 S.W.2d 691, 692 (Mo.1971)—but did not legitimize a total foreclosure of examination of the overall system if the defendant could establish systematic exclusion on a case by case basis. A broad reading of *Collor*, however, could suggest such total abstention. It seems that *Collor* should not be read broadly to immediately foreclose analysis because such a reading results in the championing of a procedural device, the peremptory challenge, over a constitutional right, the right to an impartial jury. Such a result was soundly criticized by the dissenting justices in *Swain v. State of Alabama*, supra, and apparently rejected by the majority opinion in *Peters v. Kiff*, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972).[4] The peremptory challenge system should, therefore, remain open to attack where the defendant makes a

sufficient showing. The difficulty of devising an alternative to the system is real but should not be dispositive.[5] In the present case, however, the defendant's attack on the peremptory challenge system is found to be insufficient.

A very recent decision of the Missouri Supreme Court may reveal another approach to the problem of jury exclusion. In most of the cases dealing with jury exclusion, the courts and defendants have framed the issue in the context of a black defendant's right to an impartial jury.[6] The emphasis of defendants and courts has, therefore, been on the practices of prosecutors in cases where the defendant is black.

In *State v. Baker*, 524 S.W.2d 122 (Mo.Banc 1975), the defendant offered a verified motion to support his claim of systematic exclusion by use of peremptory challenges. Defendant's emphasis of the allegation that the exclusion was particularly marked "where the accused is a Negro" was latched onto by the court as the fatal flaw in the contention, *State v. Baker*, supra, at p. 125. The inference drawn from defendant's allegation was that blacks are not excluded from juries when the defend-

---

4. An excellent analysis of the whole problem of peremptory challenges is found in Van Amburg, "A Case Study of The Peremptory Challenge: A Subtle Strike at Equal Protection and Due Process," 18 St.L. U.J. 662 (1974). Discussion of the procedural device-constitutional right dilemma is found at page 670.

5. The problem is that the suggested alternatives seem to require legislative action. Such alternatives include redrawing jury districts to give the black community numerical security on the venire panel, making the jury source list more truly representative and applying the federal cross-section rule to state juries. See Van Amburg, supra, at p. 671. Another approach is to lessen the number of peremptories available to the state. Along these lines the Missouri statute was challenged as unconstitutional in *State v. Davison*, supra, as giving the state too many challenges and thereby creating a situation tending to foster discrimination. The defendant's claim was viewed as being foreclosed by *Swain v. State of Alabama* and *State v. Davison*, supra, at 677.

6. See, "Note: The Case for Black Juries," 79 Yale Law Jrnl. 531, 537 (1970). Perhaps the *Baker* court's approach requiring the defendant to demonstrate systematic exclusion in the cases of both black and white defendants derives from a different appraisal of the purpose of preventing exclusion of blacks from juries. That prevention of exclusion from juries serves a dual purpose which has been long recognized: " . . . In *Strauder* (*Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664), the Court observed that the exclusion of Negroes from jury service injures not only defendants, but also other members of the excluded class: it denies the class of potential jurors the 'privilege of participating equally . . . in the administration of justice,' 100 U.S., at 308 . . . ." (*Peters v. Kiff*, supra, 407 U.S. at p. 499, 92 S.Ct. at p. 2167). In terms of protecting the "privilege of participating equally in the administration of justice," perhaps the race of the particular defendant is not the important factor in examining a claim of discriminatory exclusion from jury service.

ant is not a black and, therefore, that a violation of *Swain* was not established, *State v. Baker*, supra at p. 125. The rejection of defendant's claim was justified under that portion of *Swain* suggesting the necessity of demonstrating exclusion " . . . in case after case, whatever the circumstances, whatever the crime *and whoever the defendant or the victim may be* . . . ." *Swain v. State of Alabama*, supra, 380 U.S. at 223, 85 S.Ct. at 837. (Emphasis found in Baker.) We read Baker as adopting a slightly different approach from that of other Missouri cases to the extent that it requires examination of the practices of prosecutors in excluding black jurors where the defendant is white.

If the test of *Baker* is applied to the present case, the defendant must lose. Apart from any appraisal of the sufficiency of defendant's proof with regard to the exclusion of blacks in the case of black defendants, the defendant's statistics in cases of white defendants appear wholly insufficient to carry the defendant's burden of proof. The statistics presented in the defendant's memorandum indicate that the state only used its peremptory challenges to strike about one-third of the potential black jurors when the defendant was not black. These statistics can hardly be said to demonstrate systematic exclusion on a case by case basis if the practices of the prosecutor's office must be evaluated for both black and white defendants.

The final and most common approach to the problem of systematic exclusion by peremptory challenges suggests the possibility of a defendant establishing such exclusion by evidence. It is, therefore, technically distinguishable from the previously discussed approach of the *Collor* court to the extent that *Collor* forecloses examination. The very heavy and often shifting burden of proof imposed upon the defendant may, however, as a practical matter, make this third approach comparable to the *Collor* approach.[7]

In the present case the defendant attempts to shoulder the burden of proof by means of a detailed statistical memorandum examining the record of peremptory challenges in about one year of St. Louis County criminal cases. The memorandum separates strikes by the state and strikes by the defendant, thereby satisfying the requirement of a defendant demonstrating the particular responsibility of the state, as distinguished from defense counsel's participation in the alleged exclusion.[8] It is with regard to the additional "case by case" proof requirement enunciated by *Swain* that the defendant here fails. A few recent cases illustrate the perhaps insuperable proof problem confronting the defendant. In *State v. Booker*, 517 S.W.2d 937 (Mo. App.1974), the defendant supported his claims with records compiled by a reporter covering fifty-two (52) jury panels in the case of black defendants over a period of one and one-half (1½) years which revealed the following:

> " . . . Ninety-four blacks were on these panels. Of these, twelve were alternates and never subject to challenge. Of the remaining eighty-two potential black jurors, fifty-seven were peremptorily struck by the state. Five were peremptorily struck by defendants; another five were struck for cause by either side. Fifteen black jurors actually served on trial juries involving black defendants. About sixty-eight per cent of prospective black jurors were removed by the state's use of peremptory strikes." (*State v. Booker*, supra, at 939–940)

The proffered evidence was summarily rejected as insufficient and as not even reach-

---

7. Van Amburg, supra, at 683, suggests that the heavy burden of proof makes the constitutional principle a hollow one. The dissenting opinion in *Swain* expressed a similar appraisal, *Swain v. State of Alabama*, supra, 380 U.S. at 242, 85 S.Ct. 824.

8. Defendant's failure to isolate the responsibility of the state was noted as the failure of proof in *Swain v. State of Alabama*, supra, 380 U.S. at 224, 85 S.Ct. 824.

ing to the level of proof in *State v. Dinkins*, 508 S.W.2d 1 (Mo.App.1974). In *Dinkins*, the defendant adopted testimony adduced in the trial court in *State v. Collor*, supra. The defendant's claim of systematic exclusion was also rejected summarily in both *Dinkins* and *Collor*. The evidence presented in *Collor* and adopted in *Dinkins* is described in *State v. Booker*, supra, as including:

" . . . statements by a former prosecutor from St. Louis County who testified that it had been his practice to exclude blacks from juries whenever he prosecuted a black defendant. Testimony was also given by members of the Public Defender's office who regularly tried cases in which all or most of the blacks were struck by the state . . . " (*State v. Booker*, supra, at 941)

In the present case the defendant's statistics reveal thirty-one cases involving black defendants. Of forty-four (44) black jurors empaneled apparently six (6) were not sworn. Of the thirty-eight (38) black jurors sworn, the state struck twenty-nine (29), the defense struck two (2) and two (2) were struck for cause. About seventy-five percent (75%) of potential black jurors were removed by the state's use of peremptory strikes.

In the twenty-seven (27) cases of white defendants, thirty-six (36) blacks were empaneled of which apparently twenty-nine (29) were subsequently sworn. The state used its peremptory strikes to eliminate twelve (12) of the twenty-nine (29), the defense struck two (2) and five (5) were struck for cause. About forty percent (40%) of the potential black jurors were removed by the state's use of its peremptory challenges.

In assessing the present defendant's attempt to carry the burden of proof, we note that the statistics compiled by the defendant here apparently represent a subset of the statistics presented to this court in the case of *State v. Booker*, supra. The statistics here are reported as covering the period

from the Fall of 1972 through the Spring of 1973. The statistics in *Booker*, covered cases involving black defendants from November of 1971 through May of 1973, *State v. Booker*, supra, at p. 939. It is difficult to understand how we could label the current statistics as adequate in light of the decision in *State v. Booker*, supra. While the compilation in the present case may reveal a slightly higher percentage of exclusion of black jurors in cases of black defendants than was shown in *Booker*, this may well reflect a very real problem in attempting to utilize statistics to prove systematic exclusion, in light of the observed relationship between the two sets of statistics. The statistics can be misleading.

Any systematic exclusion of blacks from juries is deplorable but, in the law, discrimination may not simply be labelled, it must be proven. With considerable hesitancy, we hold that the defendant in the present case has failed to satisfactorily demonstrate systematic exclusion of black jurors on a case by case basis.

Judgment is affirmed.

SIMEONE, P. J., and GUNN, J., concur.