Domingo VILLA, Appellant,

v.

COMMERCIAL UNION INSURANCE COMPANY, Appellee.

No. 9344.

Court of Appeals of Texas, Amarillo.

June 30, 1982.

Rehearing Denied July 30, 1982.

■

Mark Smith & Associates, Ivan R. Williams, Jr., Lubbock, for appellant.

Carr, Evans, Fouts & Hunt, Donald M. Hunt, Lubbock, for appellee.

Before REYNOLDS, C. J., and DODSON and COUNTISS, JJ.

DODSON, Justice.

In this worker's compensation case, Domingo Villa appeals from a take-nothing judgment rendered in favor of Commercial Union Insurance Company by the trial court on a jury's verdict. On appeal, Villa claims the trial court reversibly erred: (1) by failing to quash the civil jury panels in Hale County because of the underrepresentation of Mexican-Americans on those panels and because defendants like Commercial Union systematically strike all Mexican-Americans from juries in which the plaintiff is a Mexican-American; (2) in allowing into evidence a Notice of Injury and Claim for Compensation concerning a previous injury; (3) in overruling Villa's objection to the inclusion in the court's charge of issues concerning the effects of his previous injury; (4) because Villa conclusively established that his injury was a producing cause of total and permanent incapacity; and (5) because the jury's failure to find total and permanent incapacity is against the great weight and preponderance of the evidence. Concluding that Villa's contentions do not present cause for disturbing the judgment, we affirm.

On 15 June 1978, Villa was employed at MBPXL Corporation's beef processing plant in Hale County, Texas. While working at the plant on that day, Villa fell a distance of 3 or 4 feet from a hydraulic table to the floor. Previously, on 1 March 1977, he had been injured while working for the same employer. Villa settled the 1 March 1977 claim a short time before the trial on the 15 June 1978 action, which was tried on the 19th-21st days of August, 1980.

During the period from 1 March 1977 to 19 August 1980, Villa was examined by several doctors and treated for his injuries. Dr. Norbert J. Bublis of Plainview, Texas treated Villa during most of the period and performed two surgical procedures on his right wrist. Dr. Howard Morgan, Jr. of Lubbock, Texas performed disc surgery at the C–5, C–6 level on the right side of Villa's spine. A few months before the trial, Dr. Malcolm Thomas performed a resection of the first rib on the right side.

At trial, Villa claimed that he injured only his right wrist in the 1 March 1977 accident, that as a result of the 15 June 1978 accident he received injuries to his head, neck, right shoulder and other parts of his body, and that the 15 June 1978 injuries were a producing cause of total and permanent incapacity. Among other things, the jury found that Villa was injured on or about 15 June 1978 while in the course of his employment, but that the injury did not produce any total incapacity. However, the jury did find that the 15 June 1978 injury produced temporary partial incapacity which began on 16 June 1978 and ended on 26 June 1978 and that the 1 March 1977 injury contributed to the temporary partial incapacity in the amount of five percent (5%).

Villa brings seven points of error. In his first point, Villa claims that the trial court erred in overruling his motion to quash jury panels in Hale County, Texas because of the underrepresentation of Mexican-Americans on those panels. In his motion to quash, he alleged specifically that "the jury wheel in Hale County, Texas, and the State, used for selecting juries provide [sic] illegal and unconstitutional and non-representative juries in that the percentage of Mexican-Americans on the said juries is far lower than the percentage of Mexican-Americans who are citizens of the County." After reviewing the record, we conclude that Villa failed to establish a prima facie case of discrimination in the selection of jury panels in Hale County, Texas.

■ To establish a prima facie case of discrimination in the selection of jury panels, a party must show: (1) that the group allegedly discriminated against is one that is a recognizable, distinct class singled out for different treatment under the laws, as written or as applied; (2) that the group is underrepresented on jury panels over a significant period of time; (3) that the selection procedure is not racially neutral or is susceptible to being used as a discrimination tool; and (4) that the exclusion of the particular minority group from the jury panels is due to some form of intentional discrimination. *Castaneda v. Partida*, 430 U.S. 482, 493–94, 97 S.Ct. 1272, 1279–80, 51 L.Ed.2d 498 (1977); and *United States v. Lopez*, 588 F.2d 450, 451 (5th Cir. 1979). The court in *Lopez* reiterated from *Castaneda* that "an official act is not unconstitutional solely because it has a racially disproportionate impact" and that "[a] prima facie case of discrimination cannot rest merely on statistics." *Lopez* at 451.

At a hearing on the motion, Villa's attorney testified, among other things, that Mexican-Americans comprised nearly forty-seven percent of Hale County's public school students; that twenty-nine percent of the voters, according to the most recent voter registration list published by the Hale County Clerk, were Mexican-Americans (no documents were introduced to this effect); that he knew of "no county in the world, where I consider the prejudice to be as vicious against the Mexican-Americans as I do consider to be [sic] in Hale County"; that he had "never won a case for a Mexican in Hale County," because "the prejudice in Hale County against a Mexican is so great that I believe that it is essentially impossible to win a case for a Mexican ... in Hale County"; and that he had never had a Mexican-American on a jury "unless someone had been ashamed not to take him on the panel because I was talking to the jury about the immense prejudice that existed against the Mexican-Americans and in the whole of West Texas, as far as that goes; the only time you get a Mexican on the jury is when the other side is shamed into leaving him there, and, then, they leave one who will patently be a follower and who can be cowed by the Anglos on the jury."

Further, he stated that "the courts of Hale County have consistently, over the years, excused Mexican-Americans for reasons of economic hardship from the juries, and this has, I understand because of the filing of these motions, stopped"; that he was confident that the 1980 census would reveal that more than forty percent of Hale County's population was Mexican-American; that he had examined every jury list of Hale County for a number of years, and the percentage of Mexican-Americans on the lists averaged about four or five percent for the three years prior to the hearing, and was as low as two percent during most of the 1970's; that the jury lists to which he referred were not lists of those persons called for jury service but were lists compiled of those people who ultimately appeared to serve; and that he was not familiar with the jury selection process employed in Hale County.

■ The record further reveals that Villa introduced no evidence concerning the procedure employed in summoning jurors or how that procedure is either not racially neutral or is susceptible to and is being used as a discrimination tool; he introduced no direct evidence of the proportion of Mexican-Americans in Hale County to the county's total population; and he introduced no evidence of the proportion of Mexican-Americans summoned to serve as jurors over a significant period of time. The jury lists submitted by Villa did not include those Mexican-Americans who had been excused from jury duty or who simply did not respond to the summons. Furthermore, he introduced no evidence to show that, as a result of intentional discrimination, Mexican-Americans had been excluded from the jury panels. Suffice it to state that Villa established none of the essential elements required to show a prima facie case of discrimination in the selection of jury panels in Hale County, Texas. Accordingly, we overrule Villa's first point of error.

In his second point of error, Villa asserts that the trial court erred in failing to overrule his Motion to Quash Civil Jury Panels in Hale County because of the practice of defendants like Commercial Union of purposely and systematically cutting any and all Mexican-Americans from juries in cases in which the plaintiff is a Mexican-American. This point was not presented to the trial court in the motion to quash, which complained only of the jury wheel used in Hale County, and thus was not preserved for this court's consideration on appeal. Nevertheless, the same contention was raised by Villa's attorney and rejected by this court in *Garcia v. Texas Emp. Ins. Ass'n*, 622 S.W.2d 626, 631 (Tex.App.—Amarillo 1981, writ ref'd n. r. e.). *See also* Annot., 79 A.L.R.3d 14 (1977). On this point, we adhere to our determination in *Garcia*. The second point is overruled.

In his fifth, sixth and seventh points of error, Villa claims that he conclusively established that his 15 June 1978 injuries produced total and permanent incapacity. Alternatively, under these points he maintains that the jury's failure to find total and permanent incapacity is against the great weight and preponderance of the evidence.

■ We first discuss Villa's "conclusive" (*i.e.* as a matter of law) challenge. When there is any probative evidence contrary to the proposition asserted, the party asserting the proposition fails to conclusively establish it. *See Stodghill v. Texas Emp. Ins. Ass'n*, 582 S.W.2d 102, 103 (Tex.1979). Villa testified that on 15 June 1978, when he fell from the hydraulic table, he landed on his head, neck and right shoulder. Villa's foreman at the plant saw the fall. The foreman testified that Villa landed on his buttocks and that Villa stated after the fall that he was not hurt. Portions of Dr. Bublis's records introduced at trial reveal that Villa complained of pain in his neck on 13 February 1978, 14 March 1978 and 3 April 1978. In the deposition of Dr. Bublis introduced at trial, the doctor was asked if he had an opinion based on reasonable medical probability as to any disability that Villa may have suffered as the result of his accident on 15 June 1978. Dr. Bublis answered, "I do not believe he had any disability as a result of his injury of June 15th, 1978, that is to his neck, head, shoulder and back." Applying the standard stated above to this evidence, we must conclude that Villa failed to conclusively establish (*i.e.* as a matter of law) that his 15 June 1978 injury produced total and permanent incapacity. Villa's "conclusive" contention is overruled.

Next, we discuss Villa's "against the great weight" challenge to the jury's failure to find total and permanent incapacity. In deciding this challenge we are required to consider all of the evidence to ascertain if the jury's failure to find total and permanent incapacity is so contrary to the great weight and preponderance of evidence as to be clearly wrong and unjust. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973). In the present case the evidence shows that Villa received two injuries in a time span of 14½ months. Also, there is evidence in the record from which the jury could have found that he had total and permanent incapacity at the time of the trial. However, in regard to Villa's challenge, the jury was called on to determine if the 15 June 1978 injury was "a producing cause of *any* total incapacity." The jury answered no. In this regard, we have considered and weighed the testimony of Dr. William Gordon, Dr. Howard Morgan, Paul Rostad, Lupe Villa, Villa, Lee Mires, Earnest Washington, the other witnesses, and all of the other evidence in the record, and we conclude that the jury's failure to find that Villa's 15 June 1978 injury was "a producing cause of any total incapacity" is not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. Villa's "against the great weight" challenge, and his fifth, sixth and seventh points of error are overruled.

In his third point of error, Villa claims that the trial court erred by admitting into evidence his notice of injury and claim for compensation filed with the Industrial Accident Board on the 1 March 1977 claim. He asserts that the notice of injury is hearsay and not admissible under any exception to the rule.

The notice of injury is signed by Villa. In response to the "description of injury" inquiry, he stated, "While in the course of his employment claimant was cutting cattle in half with a split saw when a fellow employee, separating the slaughtered cattle with a steel pipe, which pipe got stuck in the conveyor belt and then hit claimant across his right forearm and on the right side of his head causing severe injuries thereto." This statement is inconsistent with Villa's trial position that the 1 March 1977 injury involved only his right wrist and not his head, neck and shoulder. Under these circumstances, the notice of injury is admissible as an admission against his interest. *See Hartford Accident and Indemnity Co. v. McCardell*, 369 S.W.2d 331, 337 (Tex.1963); and 1A Ray, Law of Evidence § 1121 (Texas Practice 3d ed. 1980). Villa's third point of error is overruled.

In his fourth point of error, Villa maintains that the trial court erred by overruling his objections to the court's charge. Specifically, under this point, he asserts that by submitting special issues eleven and twelve, the court commented on the weight of the evidence. By special issue number eleven, the court asked the jury, "Do you find from a preponderance of the evidence that Plaintiff's injury of March 1, 1977, while working for MBPXL Corporation has contributed to the incapacity found by you?" Conditioned on an "It Did Contribute" answer, the jury was further asked to "Find from a preponderance of the evidence the percentage, if any, that Plaintiff's injury of March 1, 1977, has contributed to the incapacity found by you." The jury was instructed to answer by giving a percentage, if any.

Issues eleven and twelve are raised by the evidence. By merely submitting an issue raised by the evidence, the trial court does not comment on the weight of the evidence. To constitute a comment on the weight of the evidence, an issue or an instruction in the charge must be worded so as to indicate an opinion by the trial court as to the verity of the fact inquired about. *See Davis v. Thompson*, 581 S.W.2d 282, 285 (Tex.Civ.App.—Amarillo 1979, writ ref'd n. r. e.); and *Metal Structures Corp. v. Plains Textiles, Inc.*, 470 S.W.2d 93, 102 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.). In the present case, the challenged issues are not worded so as to indicate an opinion by the trial court as to the verity of the fact inquired about. Villa's fourth point of error is overruled.

In summary, we overruled Villa's seven points of error and affirm the judgment of the trial court.